In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2018

Wal-Mart Stores, Incorporated Associates' Health
and Welfare Plan; and Administrative Committee,
administrator of the Plan,

Plaintiffs-Appellees,

v.

Denise Wells,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 97 C 422--Rudy Lozano, Judge.

Argued February 15, 2000--Decided May 17, 2000

 Before Posner, Chief Judge, and Easterbrook and Diane
P. Wood, Circuit Judges.

 Posner, Chief Judge.  This is a suit by an ERISA
welfare plan and its administrator (only the
latter is a fiduciary and hence a proper
plaintiff, ERISA sec. 502(a)(3), 29 U.S.C. sec.
1132(a)(3); Administrative Committee v. Gauf, 188
F.3d 767, 770 (7th Cir. 1999), but we'll ignore
that detail), for reimbursement of $10,982.61
paid under the plan to a participant for medical
expenses that she incurred because of an
automobile accident. After receiving the money
from the plan, she brought a personal injury suit
against the driver of the other car involved in
the accident and obtained from that driver's
insurer a settlement of some $75,000, of which a
third went to her lawyer. (Actually, the
settlement was for claims by Wells and her
husband, but as the parties make nothing of the
husband's participation in the settlement,
neither shall we.) The plan documents entitle the
plan to reimbursement of 100 percent of any
benefits paid to a participant to the extent of
"any payment resulting from a judgment or
settlement, or other payment or payments, made or
to be made by any person or persons considered
responsible for the condition giving rise to the
medical expense or by their insurers." Wells
claims that the plan should contribute a pro rata

share of her attorneys' fees, since they were expended for the plan's benefit as well as her own. Her lawyer has a check from the insurer, payable to him as well as to Wells and her husband and to "Wal-Mart as subrogee of Denise Wells," for the entire $10,982.61 for which the plan seeks to be reimbursed. He refuses to endorse the check over to the plan. As well as seeking reimbursement, the plan asks that Wells be enjoined from continuing to violate the plan's rights by instructing or permitting her lawyer to withhold the insurer's check. It does not, however, seek interest--just the amount of the check.

We must consider whether the relief sought by the plan is equitable, because that is the only type of relief that ERISA authorizes a fiduciary to obtain. ERISA sec. 502(a)(3), 29 U.S.C. sec. 1132(a)(3); Mertens v. Hewitt Associates, 508 U.S. 248 (1993); Health Cost Controls of Illinois, Inc. v. Washington, 187 F.3d 703, 710 (7th Cir. 1999). We can set to one side the claim for an injunction, to which--were the claim legitimate--a claim for damages could ordinarily be appended under the "clean-up" doctrine of equity and, so appended, would be classified as itself equitable, e.g., Burns v. First National Bank, 985 S.W.2d 747 (Ark. 1999); American Appliance, Inc. v. Brady, 712 A.2d 1001 (Del. 1998); see also Medtronic, Inc. v. Intermedics, Inc., 725 F.2d 440, 442 (7th Cir. 1984); see generally 1 Dan B. Dobbs, Dobbs on the Law of Remedies: Damages--Equity--Restitution sec. 2.7, pp. 180-81 (2d ed. 1993)--though possibly not in an ERISA case. For the Supreme Court said in Mertens that only typical equitable relief is available under that statute. 508 U.S. at 255-57; see also Reich v. Continental Casualty Co., 33 F.3d 754, 756 (7th Cir. 1994). However that may be, a plaintiff cannot convert a claim of damages for breach of contract into an equitable claim by the facile trick of asking that the defendant be enjoined from refusing to honor its obligation to pay the plaintiff what the plaintiff is owed under the contract and appending to that request a request for payment of the amount owed. A claim for money due and owing under a contract is "quintessentially an action at law." Hudson View II Associates v. Gooden, 644 N.Y.S.2d 512, 516 (A.D. 1996); see also Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n, 430 U.S. 442, 459 (1977).

But there is more here. Wells's lawyer is holding $10,982.61 to which the plan claims to be entitled. Wells wants the claim reduced to reflect the attorneys' fees she expended in obtaining the settlement of which the $10,982.61 is a part. But since she concedes that some (in

fact the bulk) of this amount is rightfully the plan's, the lawyer's interception of the entire amount en route from the insurer to the plan is clearly wrongful. In Health Cost Controls of Illinois, Inc. v. Washington, supra, 187 F.3d at 710-11, a similar case, we held that the plan was seeking to impose on the money intercepted in transit a constructive trust--a classic form of equitable relief against someone (not necessarily a fiduciary, e.g., In re Estate of Cohen, 629 N.E.2d 1356, 1359 (N.Y. 1994); Schwartz v. Horn, 290 N.E.2d 816, 817-18 (N.Y. 1972); Pope v. Garrett, 211 S.W.2d 559, 561-62 (Tex. 1948)) who is holding property that is rightfully the plaintiff's. Clair v. Harris Trust & Savings Bank, 190 F.3d 495, 498-99 (7th Cir. 1999); Beatty v. Guggenheim Exploration Co., 122 N.E. 378, 386 (N.Y. 1919) (Cardozo, J.). In the Washington case the money was being held in escrow pending the resolution of the dispute between the plan and the participant. In this case the money is being held by a lawyer, presumably also in an escrow account (a lawyer is not permitted to commingle a client's funds with his own), and the question is whether the beneficial owner is Wells, by virtue of the settlement with the tortfeasor, or the plan, by virtue of its contract with Wells.

Some cases, including our own Administrative Committee v. Gauf, supra, 188 F.3d at 770-71, seem inclined to classify all claims of reimbursement by an ERISA plan as equitable, perhaps because of ERISA's very broad preemption clause, ERISA sec. 514, 29 U.S.C. sec. 1144; Jay Conison, Employee Benefit Plans in a Nutshell 302, 317-19 (2d ed. 1998), which might disable a plan from enforcing its rights to reimbursement if suits to enforce them were classified as legal. See also Blue Cross & Blue Shield of Alabama v. Sanders, 138 F.3d 1347, 1352-53 n. 5 (11th Cir. 1998); Southern Council of Industrial Workers v. Ford, 83 F.3d 966, 969 (8th Cir. 1996) (per curiam). The Ninth Circuit is at the opposite pole. See Reynolds Metals Co. v. Ellis, 202 F.3d 1246, 1247-49 (9th Cir. 2000); Cement Masons Health & Welfare Trust Fund v. Stone, 197 F.3d 1003 (9th Cir. 1999); FMC Medical Plan v. Owens, 122 F.3d 1258, 1260-62 (9th Cir. 1997). We need not consider in this case the outer bounds of ERISA's concept of equity, as a suit to impose a constructive trust nestles comfortably within them under any view. Owens, in contrast, was explicit in saying that the plan had not sought the imposition of a constructive trust. Id. at 1261.

So we have jurisdiction and can proceed to the merits. The language from the plan document that we quoted earlier seems clear, and clearly to

favor the plan's claim. But contracts--which for most purposes ERISA plans are, Herzberger v. Standard Ins. Co., 205 F.3d 327, 330 (7th Cir. 2000); see also John H. Langbein, "The Contractarian Basis of the Law of Trusts," 105 Yale L.J. 625 (1995)--are enacted against a background of common-sense understandings and legal principles that the parties may not have bothered to incorporate expressly but that operate as default rules to govern in the absence of a clear expression of the parties' intent that they not govern. This principle has been applied to the interpretation of ERISA plans in a number of cases in this and other courts. See Cutting v. Jerome Foods, Inc., 993 F.2d 1293, 1297-99 (7th Cir. 1993); Waller v. Hormel Foods Corp., 120 F.3d 138, 141 (8th Cir. 1997); Cagle v. Bruner, 112 F.3d 1510, 1520-22 (11th Cir. 1997) (per curiam); Barnes v. Independent Automobile Dealers Ass'n, 64 F.3d 1389, 1394-96 (9th Cir. 1995). To read the Wal-Mart plan literally would allow the plan to free ride on the efforts of the plan participant's attorney, contrary to the equitable concept of "common fund" that governs the allocation of attorney's fees in cases in which the lawyer hired by one party creates through his efforts a fund in which others are entitled to share as well. Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980); Sprague v. Ticonic National Bank, 307 U.S. 161, 166 (1939); Davis v. Carl Cannon Chevrolet-Olds, Inc., 182 F.3d 792, 795 (11th Cir. 1999); 1 Dobbs, supra, sec. 3.10(2), pp. 393-98; John P. Dawson, "Lawyers and Involuntary Clients: Attorney Fees From Funds," 87 Harv. L. Rev. 1597 (1974).

It would also gratuitously deter the exercise of the tort rights of plan participants. For one can easily imagine a case in which, under the plan's interpretation, the participant (or nonparticipant beneficiary, such as a spouse or child) would lose part of her plan benefits simply by virtue of having exercised her right to bring a tort suit against a third party. Suppose Wells had obtained a settlement of $12,000 of which her lawyer got $4,000 pursuant to a standard contingent-fee contract, leaving her with $8,000. Since her settlement would be greater than $10,982.61, the plan under its theory would be entitled to that entire amount, leaving her worse off by $2,982.61 than she would have been had she not sued. This would be true even if she had sought no medical benefits, or any other benefits available under the plan, in that suit--it might have been a suit purely for damage to her car. This prospect might well deter a suit likely to result in a judgment or settlement not much larger than the benefits available under the plan--and in that event the language on which the plan relies would produce

undercompensation for harms that were unrelated to the type of harm to which the benefits pertain. Wells would have been surprised to have been told when she signed onto this plan that as a result of it she might not be able to obtain compensation for tortiously inflicted property damage. The plan itself might well be worse off in the long run, as it would have to incur attorneys' fees in order to enforce its right of subrogation. See Blackburn v. Sundstrand Corp., 115 F.3d 493, 496 (7th Cir. 1997).

The plan documents neither advert to the anomaly just discussed nor expressly repudiate common-fund principles, and so they do not alter the background understanding of the allocation of attorneys' fees that is embodied in those principles. We interpolate those principles to avoid wreaking unintended consequences. United McGill Corp. v. Stinnett, 154 F.3d 168, 172-73 (4th Cir. 1998), and Bollman Hat Co. v. Root, 112 F.3d 113, 116-18 (3d Cir. 1997), are only superficially in conflict with this result. They refuse to invalidate a plan provision interpreted to bar the application of common-fund principles; we pose the issue as one not of validity but of sound application of principles of contract interpretation. More problematic is Walker v. Wal-Mart Stores, Inc., 159 F.3d 938 (5th Cir. 1998) (per curiam), which upheld a literal reading of identical language--but did so as a matter of deference to the interpretation by the plan's administrator.

That's a critical qualification. In cases in which the plan documents give the plan's administrator discretion to interpret the plans, our review is deferential. E.g., Mers v. Marriott International Group Accidental Death & Dismemberment Plan, 144 F.3d 1014, 1020 (7th Cir. 1998); Fuller v. CBT Corp., 905 F.2d 1055, 1058 (7th Cir. 1990). But the presumption is against deference, Herzberger v. Standard Ins. Co., supra, and has not been rebutted. For there is no reference to discretion in the part of the plan documents that deals with the plan's right to reimbursement--only in the part that deals with benefits determinations. Determinations of benefits, determinations that supervene on interpretation of key terms such as "disability," invite the exercise of discretion, being inescapably particularistic and fact-bound; determinations of issues related solely to the financial aspects of the plan do not.

An amendment in 1996 to the plan that was in force when Wells was injured and sought and received benefits explicitly refuses to pick up any part of the plan participant's attorneys' fees, as in Health Cost Controls v. Isbell, 139

F.3d 1070 (6th Cir. 1997), and Ryan v. Federal Express Corp., 78 F.3d 123, 124, 127 (3d Cir. 1996). The plan argues that the amendment is applicable to the claim of reimbursement because the claim was made in 1997, after the amendment took effect. This is an astonishing argument, implying as it does that the amending power can be used to force plan participants and beneficiaries to return benefits already received and spent. The logic of the argument is that if the plan were amended to abolish some class of benefits (say, reimbursement for the cost of treating mental disorders), the recipients could be forced to disgorge them even if they had received the benefits many years earlier. The argument was rejected in the very case that the plan mistakenly cites in support of it. Member Services Life Ins. Co. v. American National Bank & Trust Co., 130 F.3d 950, 957-58 (10th Cir. 1997).

Because the 1996 amendment is inapplicable to this case, we need not consider whether state "common fund" law, see Ind. Code. sec.sec. 34-53-1-2, 34-51-2-19, is applicable at all, because either in terms, Ind. Code sec. 34-53-1-2, or as a matter of interpretation, Allstate Ins. Co. v. Smith, 656 N.E.2d 1156, 1158 (Ind. App. 1995); Standard Mutual Ins. Co. v. Pleasants, 627 N.E.2d 1327, 1330 (Ind. App. 1994), it is applicable only to insurers, and an ERISA plan is not deemed to be (and the Wal-Mart plan is not contended to be) an insurer. ERISA sec. 514(b)(2)(B), 29 U.S.C. sec. 1144(b)(2)(B); Stillmunkes v. Hy-Vee Employee Benefit Plan & Trust, 127 F.3d 767, 770 (8th Cir. 1997). We likewise need not consider whether, if the state's common fund law is otherwise applicable, it is preempted by ERISA. Although, as explained in Blackburn v. Sundstrand Corp., supra, 115 F.3d at 496, state laws of general applicability that affect ERISA plans no differently from similar economic activity are not preempted by ERISA, our decision in Administrative Committee v. Gauf, supra, 188 F.3d at 771, holds that when (unlike the situation in Blackburn) an ERISA plan is the plaintiff in a suit claiming reimbursement, its claim arises under and is governed by ERISA, or by federal common law created under the authority of ERISA. Whether Gauf and Blackburn can coexist is thus another issue we needn't try to resolve today; nor whether, if the state's common fund law is not preempted and is fully applicable, it can nevertheless be overridden by an express contractual provision, as intimated in Sell v. United Farm Bureau Family Life Ins. Co., 647 N.E.2d 1129, 1133 (Ind. App. 1995); nor whether if it is preempted it is preempted in favor of a similar federal common law doctrine, as implied by McIntosh v. Pacific Holding Co., 120 F.3d 911

(8th Cir. 1997), and Waller v. Hormel Foods Corp., supra, 120 F.3d at 141, but rejected in Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 278-79 (1st Cir. 2000), and if so whether that doctrine, too, can be overridden by an express provision in the plan, as implied by United McGill Corp. v. Stinnett, supra, 154 F.3d at 172-73; Health Cost Controls v. Isbell, supra; Bollman Hat Co. v. Root, supra, 112 F.3d at 116-18, and Ryan v. Federal Express Corp, supra, 78 F.3d at 127.

Wells seeks not only a sharing of the attorneys' fees with the plan, to which she is entitled, but also a sharing of the reduction of her claim in the settlement by 25 percent to reflect her comparative fault. We are at a loss to understand how that reduction, unlike the expense of the lawyer who obtained the settlement, could be thought to have conferred a benefit on the plan for which it should contribute a part of the cost under common-fund principles. And while Indiana law, were it applicable, might provide the relief she is seeking, see Ind. Code sec. 34-51-2-19, she does not invoke that or any other provision of Indiana law, and so has waived the argument.

Reversed.