WAUPACA FOUNDRY, INC., as Plan Administrator for The Medical and Disability Plan for Employees of Waupaca Foundry, Inc., Plaintiff,

v.

Timothy GEHLHAUSEN, Denise Gehlhausen, and Ashlyn Gehlhausen, a Minor, through her Parents, Timothy Gehlhausen and Denise Gehlhausen, Defendants.

No. EV99–0019–C–Y/H.

United States District Court, S.D. Indiana, Evansville Division.

June 30, 2000.

Letha S. Kramer, Hall, Render, Killian, Heath & Lyman, Indianapolis, IN, for plaintiff.

Rhoda Grossberg Faller, Kevin J. Renfro, Becker Law Office, Louisville, KY, for Defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

Waupaca Foundry, Inc. ("Waupaca") brought this lawsuit against a five-year-old girl named Ashlyn Gehlhausen and her parents, Timothy and Denise. Pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), Waupaca seeks declaratory and injunctive relief regarding its subrogation rights under an employee benefit plan. This matter is now before the court on Waupaca's motion for summary judgment filed September 15, 1999. For the reasons that follow, the motion is **DENIED.**

## I. BACKGROUND

The facts are not in dispute. Waupaca provides its employees with group medical, dental and disability coverage through a medical and disability plan. The plan is self-funded, relying solely upon contributions from Waupaca to pay out benefits, and it is an "employee welfare benefit plan" for purposes of ERISA. *See* 29 U.S.C. § 1002(1). Mr. Gehlhausen works for the foundry, so he and his dependents are eligible for certain benefits under the plan. Mr. Gehlhausen's daughter, Ashlyn, was born on October 22, 1994. During birth, Ashlyn suffered from shoulder dystocia, injuring her left brachial plexus. Ashlyn has received treatment for those injuries, and may receive more treatment in the future. The plan has paid $36,397.49 for Ashlyn's medical services stemming from the dystocia.

Following those payments, the plan's third party administrator asked the Gehlhausens to sign a subrogation and reimbursement agreement. The Gehlhausens refused. On April 15, 1998, the Gehlhausens filed a lawsuit in Dubois Circuit Court, seeking damages from the doctor and hospital involved in Ashlyn's delivery. That action is still pending, and is set for trial later this year. The plan has intervened in the state court action to protect its subrogation rights. On July 17, 1998, the plan learned that the Gehlhausens had refused to sign the agreement without assurance that the plan would pay its proportional share of attorney's fees in the state court action. The plan again requested the Gehlhausens to sign the agreement on August 6, 1998, but the Gehlhausens again declined. The plan forwarded the Gehlhausens a differently-worded agreement on December 9, 1998. On February 11, 1999, the plan commenced this action, seeking: 1) an injunction to compel Ashlyn to sign the second agreement; and 2) a declaratory judgment as to the plan's rights to any recovery in the state court matter.

## II. ANALYSIS

A grant of summary judgment is appropriate when the pleadings and other submissions to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). To determine whether a genuine issue of material fact exists, a court must construe the facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the mere existence of "some metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Waupaca seeks a declaration to the effect that the plan is entitled to be reimbursed from the first dollars that the defendants recover from a third party, without an offset for attorney's fees. Waupaca also wants the court to compel Ashlyn to sign an agreement to that ef-

fect. The Gehlhausens acknowledge that the plan has subrogation rights, but they contend that the plan should pay its pro rata share of attorney's fees from any recovery.

In relevant part, ERISA provides:

A civil action may be brought ... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....

29 U.S.C. § 1132(a)(3). Waupaca has submitted copies of two documents—a 1993 Plan Document and a 1998 Plan Document. (*See* Affidavit of Janis Sherman, Plaintiff's Exhibits A and B). By its terms, the 1998 Plan Document went into effect on January 1, 1998. Ashlyn was injured, sought and received some benefits before 1998. However, she has received more benefits after the effective date of the 1998 Plan Document, and she is expected to incur future medical expenses. Which plan applies?

■ The plan is a welfare benefit plan, so it is exempt from the accrual, funding, and vesting requirements that ERISA imposes on pension plans. *Young v. Standard Oil (Indiana)*, 849 F.2d 1039, 1045 (7th Cir.1988). Therefore, the plan can be modified at any time. *See, e.g., Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). Nevertheless, employers can't use their amending power "to call off a bet after the race is over," *Medina v. Time Ins. Co.*, 3 F.Supp.2d 996, 998 (S.D.Ind. 1998), because "benefits under a welfare benefit plan may vest under the terms of the plan itself," *Member Services Life Ins. Co. v. American Nat. Bank and Trust Co. of Sapulpa*, 130 F.3d 950, 958 (10th Cir. 1997). In *Filipowicz v. American Stores Ben. Plans Committee*, 56 F.3d 807 (7th Cir.1995), the court held that a modification to an ERISA plan "can have no effect on a beneficiary's claim to benefits." *Id.*

at 811. Instead, the court looked to general insurance law principles and applied the version of the plan which was in effect when the beneficiary's rights vested under the plan. *Id.* at 815.

In determining when an employee's rights "vest" under a plan document, several courts have distinguished between two general forms of health insurance. One form insures against illness or injury, and an insured's right to benefits vests when the illness or injury is manifest. The other form insures against medical expenses, and the insured's right to benefits vests when a covered expense is incurred. *See Member Services Life Ins. Co.*, 130 F.3d at 954; *Wheeler v. Dynamic Engineering, Inc.*, 62 F.3d 634, 638 (4th Cir.1995). Under this approach, it appears that Ashlyn's right to benefits vested at the time of her injury. The 1993 Plan Document is not a model of clarity, but the use of capital letters and lowercase letters in the document suggests that the injury, not the expense, is the event triggering coverage: "When a Plan Member is admitted to a Hospital as a bed patient because of an Injury or Sickness, other than mental or nervous disorders, the Plan will cover expenses to the maximum shown on the Schedule of Coverage...." (Exhibit A, p. 17). The document seems to say that the plan will cover certain costs that were incurred because of injury or sickness.

The real dilemma rears its head in cases like this—when an employer modifies a health benefit plan and the beneficiary already suffers from a condition that would be expected, absent any change, to entitle her to benefits for future medical treatment. *See McGann v. H & H Music Co.*, 946 F.2d 401, 405 n. 5 (5th Cir.1991) (upholding the amendment as to future benefits, but noting that the plaintiff had been reimbursed for all expenses incurred before the effective date of the amendment); *Wheeler*, 62 F.3d at 640 (holding that where employer had amended health plan to exclude a certain course of treatment, amendment could not be applied to beneficiary who had already begun that treat-

ment). The difficulty concerns trying "to reconcile an employer's right to modify a plan with a beneficiary's right to receive continuing benefits for long-term care for a medical condition that exists before the attempted modification." *Medina*, 3 F.Supp.2d at 998.

■ In this case, the relevant difference between the two plan documents concerns Waupaca's reimbursement and subrogation rights. Ashlyn brought her medical malpractice claim before the 1998 Plan Document took effect. A beneficiary's decision to bring a time-consuming and expensive medical malpractice action will often critically depend on her understanding of the extent to which liens will attach to a recovery. Indeed, if a medical lien does not offset for attorney's fees (as provided under the 1998 Plan Document), the beneficiary might "lose part of her plan benefits simply by virtue of having exercised her right to bring a tort suit against a third party." *Wal–Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells*, 213 F.3d 398, 402 (7th Cir.2000). A plan ought not be permitted to conscript its participants into becoming a de facto collection agency, changing the language of the plan documents such that the beneficiary's lawsuit recovers only for the plan at the beneficiary's own expense. In a case where the participant had already received benefits under an ERISA plan, the Seventh Circuit has refused to apply an amendment which was made (as here) prior to the plan's claim for subrogation and reimbursement. *Id.* at 403. No principle of contract law allows a party to unilaterally modify the extent of its own rights, and the plan's amending power cannot be used "to force plan participants and beneficiaries to return benefits already received and spent." *Id.* For these reasons, the 1993 Plan Document governs Waupaca's subrogation and reimbursement rights.

■ The plan document is a writing setting forth the terms of a contract. Normally, a court's interpretation of a contract is plenary; that is, the court reviews a contract's terms de novo instead of relying

upon either parties' interpretation of what the contract means. *E.g., Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir.2000). Nevertheless, the 1993 Plan Document provides that Waupaca "has the discretionary authority to determine all benefits, to interpret the provisions of the Plan and to resolve all questions pertaining to the administration, interpretation, and application of the Plan's provisions." (Exhibit A, p. 42). Another thorny issue in this case concerns whether that language triggers a more deferential standard of review.

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the standard of review should be arbitrariness and caprice. *Id.* at 115, 109 S.Ct. 948. Waupaca believes that *Firestone* compels a deferential review of the plan documents. But while the plan purports to grant the administrator broad discretion, Waupaca seeks declaratory and injunctive relief under § 1132(a)(3); this case concerns neither a "denial of benefits" nor § 1132(a)(1)(B). Moreover, *Firestone* contained some important limiting language: "We express no view as to the appropriate standard of review for actions under other remedial provisions of ERISA." *Id.* at 108, 109 S.Ct. 948.

Several courts have interpreted *Firestone*'s limiting language to mean that *Firestone* was intended to address the standard of review only under a single section of ERISA, § 1132(a)(1)(B), not under other remedial provisions where de novo review is appropriate. *See In re Unisys Savings Plan Litigation*, 173 F.3d 145, 154 (3rd Cir.1999); *Carriers Container Council, Inc. v. Mobile S.S. Ass'n Inc.- Intern. Longshoreman's Ass'n, AFL–CIO Pension Plan and Trust*, 896 F.2d 1330, 1341 n. 20 (11th Cir.1990); *Ches v. Archer*, 827 F.Supp. 159, 165 (W.D.N.Y.1993). *But*

*see Board of Admin. v. Huntsman,* 187 F.3d 634, 1999 WL 591458, *2, n. 3 (6th Cir.1999) (arbitrary and capricious standard applies inasmuch as defendant is challenging an administrator's interpretation of plan documents). Apparently, the Seventh Circuit has not yet spoken on this issue.[1] However, the Seventh Circuit has cautioned that district courts should employ a presumption in favor of de novo review of ERISA plans:

> [C]ourts treat an ERISA plan as a special kind of contract ... to confer greater protection on one of the parties, namely the participant or beneficiary, than on the other, the plan administrator (they do this by invoking their understanding of trust law); and obviously this particular weighting favors, in doubtful cases, a presumption of full judicial review at the behest of the favored party.

*Herzberger,* 205 F.3d at 330.

Given *Firestone*'s limiting language, it appears that *Firestone* does not compel

1. Several cases seem to recognize the limitation in dicta. *See Mers v. Marriott Intern. Group Accidental Death and Dismemberment Plan,* 144 F.3d 1014, 1020 (7th Cir.1998) ("In reviewing a *denial of benefits* under ... § 1132(a)(1)(B) ... we look for guidance to the Supreme Court decision in *Firestone* ....") (emphasis added); *Swaback v. American Information Technologies Corp.,* 103 F.3d 535, 540 (7th Cir.1996) ("In reviewing a *denial of benefits* ... under § 1132(a)(1)(B) ... we look to the principles laid down in *Firestone.* ...") (emphasis added); *Morton v. Smith,* 91 F.3d 867, 869 (7th Cir.1996) ("In *Firestone,* the Supreme Court determined how courts should review the decision-making of plan fiduciaries in *an action challenging the denial of benefits.*") (emphasis added). *But see Wal–Mart,* 213 F.3d at 403 ("In cases in which the plan documents give the plan's administrator discretion to interpret the plans, our review is deferential.").

2. Pre *Firestone* ERISA decisions buttress this distinction. For example, the Third Circuit, in *Struble v. New Jersey Brewery Employees' Welfare Trust Fund,* 732 F.2d 325 (3rd Cir. 1984), has offered a persuasive explanation for the applicability of varying standards of review among ERISA cases based upon the law of trusts:

the court to depart from its usual practice of reviewing contract terms de novo. However, courts are to develop a "federal common law of rights and obligations under ERISA-regulated plans." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Should *Firestone* be extended to provide for deferential review under the facts of the present case?

Before *Firestone,* courts generally limited the applicability of the more lenient, arbitrary and capricious standard to cases concerning a trustee's denial of benefits. *Struble v. New Jersey Brewery Employees' Welfare Trust Fund,* 732 F.2d 325, 333 (3d Cir.1984); *Trapani v. Consolidated Edison Employees' Mut. Aid Soc., Inc.,* 693 F.Supp. 1509, 1515 (S.D.N.Y.1988). Under the *Firestone* court's rationale, a deferential standard should likewise only apply in "denial of benefits" cases because only those cases are controlled by principles of trust law.[2] The *Firestone* court noted that "[i]n determining the appropri-

> In actions by individual claimants challenging the trustees' denial of benefits, the issue is not whether the trustees have sacrificed the interests of the beneficiaries as a class in favor of some third party's interests, but whether the trustees have correctly balanced the interests of present claimants against the interests of future claimants.... "[T]he purpose of the Fund is to provide benefits to as many intended employees as is economically possible while protecting the financial stability of the Fund." In such circumstances it is appropriate to apply the more deferential "arbitrary and capricious" standard to the trustees' decisions. In the latter type of action, the gravamen of the plaintiff's complaint is not that the trustees have incorrectly balanced valid interests, but rather that they have sacrificed valid interests to advance the interests of non-beneficiaries.

*Id.* at 333–34 (citations omitted). Similarly, this case does not concern the propriety of a trustee's fiduciary decision in balancing the Gehlhausens' claims against the interest of future claimants. Instead, Waupaca seeks to recover money that might be paid over to the Gehlhausens by a third party pursuant to Waupaca's contractual rights under the plan.

ate standard of review for actions under § 1132(a)(1)(B)" the court is to be "guided by principles of trust law." *Firestone,* 489 U.S. at 110, 109 S.Ct. 948 (quoting *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 570, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985)). The court then reasoned that under trust principles, a deferential standard of review is appropriate when a trustee exercises discretionary powers. *Id.* (citing RESTATEMENT (SECOND) OF TRUSTS § 187 (1959)).

In denial of benefits cases, therefore, deference may be appropriate because the trustee must walk a tightrope, weighing a claimant's right to benefits against the interest of the other beneficiaries. By way of contrast, Waupaca's right to reimbursement does not turn on the propriety of Waupaca's conduct as a trustee; the issue is simply one of contract interpretation. The Seventh Circuit has supplied another persuasive reason not to apply the arbitrary and capricious standard of review in cases like this one: "Determinations of benefits, determinations that supervene on interpretation of key terms such as "disability," invite the exercise of discretion, being inescapably particularistic and factbound; determinations of issues related solely to the financial aspects of the plan do not." *Wal–Mart,* 213 F.3d at 403. Accordingly, the court shall interpret the plan documents de novo.

■ Under the court's plenary review, determinations by the plan administrator are without force. An ERISA plan is a contract, *e.g., Anstett v. Eagle–Picher Industries, Inc.,* 203 F.3d 501, 503 (7th Cir. 2000); *Mathews v. Sears Pension Plan,* 144 F.3d 461, 465 (7th Cir.1998), and "the meaning of a contract is ordinarily decided by the court, rather than by a party to the contract, let alone the party that drafted it." *Herzberger,* 205 F.3d at 330. To the extent that a contract would purport to vest such discretionary authority in one of its parties, the contract is not enforceable. *See id.* That is so whether or not there is an "ERISA thumb on the scales." *Id.* The

court must therefore give a fresh look to the language in the 1993 Plan Document concerning Waupaca's subrogation and reimbursement rights.

■ The plan's subrogation and reimbursement rights are expressed in the 1993 Plan Document as follows:

By making any payment of benefits to or on behalf of any Plan Member ... the Plan shall be subrogated to the Plan Member's rights to all ... rights of recovery against any third party ... to the extent of any and all payments of benefits therefor made by ... the Plan. Any amounts received by a Plan Member ... shall be apportioned as follows: The Plan shall be reimbursed first to the extent of any payments the Plan makes to or on behalf of the Plan Member. If any balance remains, it shall be applied to reimburse the Plan Member.

(Exhibit A, p. 45). The plan document does not expressly refer to the allocation of attorney's fees. In *Wal–Mart,* the Seventh Circuit recently construed an almost identical provision of an ERISA plan to provide for pro-rata fee sharing between the plan and its participant. 213 F.3d at 402–403. The *Wal–Mart* court reasoned that a more literal reading of the plan's terms "would allow the plan to free ride on the efforts of the plan participant's attorney, contrary to the equitable concept of 'common fund'. . . ." *Id.* at 402. Moreover, reading the "common fund" doctrine out of the plan would result in unintended consequences and frustrate the expectations of the parties. *Id.* at 402–403. Because the plan did not "expressly repudiate" common fund principles, the court held that the common fund doctrine adhered by virtue of "sound application of principles of contract interpretation." *Id.*

Like the plan in *Wal–Mart,* the plan in this case must be construed against the backdrop of common fund principles. Since the plan is silent on the issue of attorney's fees, the common fund doctrine will apply as a matter of contract interpretation. In other words, the parties are

assumed to have agreed to an equitable sharing of fees absent some express plan term to the contrary. Accordingly, Waupaca is not entitled to either declaratory or injunctive relief. Its subrogation rights must be offset by an equitable share of attorney's fees.

### III. CONCLUSION

For the reasons set forth above, Waupaca's motion is hereby **DENIED.** And although the Gehlhausens did not move for summary judgment, the court may grant summary judgment sua sponte where (as here) there are no issues of material fact and Waupaca had an opportunity to raise the relevant legal arguments. *See Kennedy v. Children's Service Soc. of Wisconsin,* 17 F.3d 980, 983 n. 1 (7th Cir.1994); *Colan v. Cutler–Hammer, Inc.,* 812 F.2d 357, 360 n. 2 (7th Cir.1987). Therefore, summary judgment in favor of the Gehlhausens is hereby **GRANTED.** This entry resolves every pending claim, so it is a final judgment. *See* FED.R.CIV.P. 54(b).