MID–CENTURY INSURANCE COMPANY, Plaintiff,

v.

James MENKING, Defendant and Cross–Claimant,

and

Administrative Committee of the Wal–Mart Associates Health and Welfare Plan, Defendant and Cross–Claimant.

Administrative Committee of the Wal–Mart Associates Health and Welfare Plan, Plaintiff,

v.

James Menking and Mid–Century Insurance Company, Defendants.

Nos. 8:02CV267, 8:02CV455.

United States District Court, D. Nebraska.

Aug. 7, 2003.

**1050**

Daniel P. Chesire, Lamson, Dugan Law Firm, Omaha, NE, Larry C. Johnson, Johnson, Welch Law Firm, Fremont, NE, for Mid Century Ins.

Christopher R. Hedican and Heidi A. Guttau–Fox, Baird, Holm Law Firm, Omaha, NE, Michael G. Connery, Torriano N. Garland, Kutak, Rock Law Firm, Omaha, NE, for Associates Health and Welfare Plan.

## MEMORANDUM, ORDER AND JUDGMENT

SHANAHAN, District Judge.

Before the court are multiple pending motions in two cases, Case Nos. 8:02CV267 and 8:02CV455. The cases involve essentially the same parties and the same dispute, and the parties have stipulated that the court may consolidate the cases for all purposes. Accordingly, pursuant to the stipulation, the court will consolidate Case No. 8:02CV267 and Case No. 8:02CV455 for all purposes, including consideration of the pending motions to dismiss and for summary judgment. For the reasons herein, the court will deny James Menking's motions to dismiss and for summary judgment, and will and grant the motion for summary judgment filed by the Administrative Committee of the Wal–Mart Associates Health and Welfare Plan.

## I. BACKGROUND

James Menking ("Menking") and the Wal–Mart Associates Health and Welfare Plan ("Plan") each claim entitlement to $25,000 in proceeds from Menking's underinsured motorist coverage. On July 20, 1997, Menking was injured in an automobile accident. At the time, Menking's mother was an employee of Wal–Mart Stores, Inc., and Menking was a beneficiary under her health insurance coverage. The Plan paid $77,727.19 of Menking's medical expenses.

Beyond coverage under the Plan, Menking also maintained $25,000 of underinsured motorist coverage through Mid–Century Insurance Company ("Mid–Century"). The Plan, a self-funded entity under the Employee Retirement Income Security Act, 29 U.S.C.A. § 1001 *et seq.* ("ERISA"), notified Mid–Century regarding a right of subrogation in the $25,000 based upon provisions in the agreement between the Plan and Menking's mother. Menking asserted that he, not the Plan, should receive the money.

Wary of being a stakeholder, Mid–Century brought an interpleader action against Menking, Wal–Mart Stores, Inc., and the Plan in state court and sought to deposit the $25,000 with the court. Before deposit could occur, however, the Plan removed the case to federal court. The case was docketed as Case No. 8:02CV267 and aligned Mid–Century as the Plaintiff and Menking and the Plan as Defendants. The Plan then submitted a cross-claim against Menking for payment of the $25,000 under the civil enforcement provision of ERISA, § 502(a)(3).

Menking then moved to remand the case back to state court. Concluding that the issues in the suit were completely preempted by ERISA, United States Magistrate Judge Thomas D. Thalken entered a Report and Recommendation recommending that this court deny the motion to

remand. Menking did not object to the Report and Recommendation. *See* NELR 72.4; 28 U.S.C. § 636(b)(1)(A).

Perhaps concerned about the availability of removal jurisdiction, the "Administrative Committee" of the Plan instituted a second action in federal court prior to this court's ruling on Magistrate Judge Thalken's Report and Recommendation in Case No. 8:02CV267. *See Wal–Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells,* 213 F.3d 398, 400 (7th Cir.2000) (the administrative committee is, by statute, the fiduciary); *Administrative Committee of Wal–Mart Stores, Inc. v. Varco,* 338 F.3d 680, 2003 WL 21741691 (7th Cir. July 29, 2003) (plan instituted second action in federal court). Docketed as Case No. 8:02CV455, the second action aligns the Plan as Plaintiff and Menking and Mid–Century as Defendants. The second action also seeks relief pursuant to § 502(a)(3).

In addition, the Plan filed a motion to consolidate the second-filed case, Case No. 8:02CV455, with the first-filed case, Case No. 8:02CV267. Mid–Century filed a document indicating that it had no objection to consolidation, and Menking never responded. *See* NELR. 7.1(b)(2) (providing for 10 days to submit a brief opposing a motion). Before the court issued an order on consolidation, however, Menking filed both an answer and a motion to dismiss in Case No. 8:02CV455. The parties then filed cross-motions for summary judgment in Case No. 8:02CV455.

■■■ Given the unopposed motion for consolidation and the fact that the parties did not object to the Report and Recommendation pending in Case No. 8:02CV267, this court adopted the Report and Recommendation and denied remand in Case No. 8:02CV267.[1] The court then ordered the parties to submit their planning report under Fed.R.Civ.P. 26(f) in Case No. 8:02CV267. In the planning report, the parties (including Menking) stipulated that Case No. 8:02CV267 may be "consolidated for all purposes" with Case No. 8:02CV455, and that the court may treat the pending motions for summary judgment in Case No. 8:02CV455 as having been filed in both cases. The parties further stipulated that Mid–Century could pay the proceeds of the $25,000 into court and be dismissed from the lawsuit, leaving Menking and the Plan to adjudicate their adverse claims to the proceeds. To date, however, the court has not permitted dismissal of Mid–Century or granted leave to deposit the disputed funds under Fed.R.Civ.P. 67.[2]

---

1. In the Order adopting the Report and Recommendation and denying remand, this court made the erroneous suggestion that removal appeared alternately proper under the Federal Interpleader Statute, 28 U.S.C. § 1335. Although that provision does allow for original federal jurisdiction over interpleader actions, removed interpleader actions are still restricted by 28 U.S.C. § 1441(b), the removal statute. Section 1441(b) does not permit removal of any action not based on a federal question when at least one defendant is a citizen of the state in which the action is brought. In this case, Menking is a citizen of Nebraska, and accordingly, the restriction in section 1441(b) prevents removal under the interpleader statute. *See Allstate Life Ins. Co. v. Hanson,* 200 F.Supp.2d 1012 (W.D.Wis.2002).

2. One court has held that acceptance of money into the court registry makes imposition of a constructive trust inappropriate. *See Bauhaus USA v. Copeland,* 292 F.3d 439, 446 (5th Cir.2002) (concluding that money in court registry was not in hands of defendant, and therefore, action could not lie). Here, however, Mid–Century has maintained possession of the funds, and the court need not direct payment into the registry given today's holding. Even if the court had ordered payment of the funds into the registry, however, the court believes the dissent in *Bauhaus* provides the better view: that payment into the court registry does not automatically defeat the lawsuit. *See Id.* at 451 (Wiener, J., dissenting).

## II. ANALYSIS

### A. FEDERAL PREEMPTION AND ENFORCEMENT OF ERISA SUBROGATION RIGHTS

The Eighth Circuit has routinely concluded that suits for subrogation by ERISA fiduciaries (like the Plan) are completely preempted by ERISA. *See Lyons v. Philip Morris Inc.*, 225 F.3d 909, 912 (8th Cir.2000); *United of Omaha v. Business Men's Assur. Co. of America*, 104 F.3d 1034 (8th Cir.1997); *Southern Council of Indus. Workers v. Ford*, 83 F.3d 966, 969 (8th Cir.1996); *Baxter v. Lynn*, 886 F.2d 182, 185–86 (8th Cir.1989) (concluding that actions against self-funded plans based on Missouri's common law of subrogation and "any such state law" are preempted by ERISA). Furthermore, on at least two occasions prior to 2002, the Eighth Circuit permitted suits under the exclusive civil enforcement provision of ERISA, § 502(a)(3), where the suits sought "specific performance" of subrogation clauses in plan agreements. *See Southern Council*, 83 F.3d at 969 (permitting subrogation suit against plan beneficiary); *Lyons*, 225 F.3d at 912–13 (recognizing the § 502(a)(3) restriction to "equitable relief" but permitting subrogation suit to proceed against a non-beneficiary/participant third-party).

In 2002, however, the United States Supreme Court decided *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), which altered the relevant remedial landscape. In *Great–West*, an ERISA plan paid medical expenses to the plan beneficiary and the beneficiary then received a settlement from a third party. The settlement was then distributed to the beneficiary's attorney, a special needs trust for the beneficiary's care, and to other lienholders in amounts approved by a state court. The plan, proceeding under § 502(a)(3), ultimately sued the beneficiary in federal district court to recover a portion of the settlement proceeds.

By its terms, § 502(a)(3) authorizes ERISA fiduciaries (like the Plan) "to obtain ... appropriate *equitable relief* ... to enforce ... the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii) (emphasis added). Writing for a five-Justice majority, Justice Scalia interpreted this statutory language to mean that § 502(a)(3) authorizes ERISA plans to pursue only that relief which was "typically available" in courts of equity, not in courts of law, in the days of the divided bench.[3] *Great–West*, 534 U.S. at 210, 122 S.Ct. 708. According to the Court, relief "typically available in equity" includes actions for specific relief, including injunction and certain forms of "equitable restitution" like constructive trust and equitable lien. *Id.* at 211–14, 122 S.Ct. 708.

**3.** What "typically available in equity" means is a matter of some debate, and Justice Scalia's use of this phrase has generated significant criticism from ERISA scholars. *See* Tracy A. Thomas, *Justice Scalia Reinvents Restitution*, 36 Loy. L.A. L.Rev. 1063, 1064 (2003) (noting that, "[h]istorically, equitable restitution was not restricted to three types of formalistic claims seeking only the return of plaintiff's specific funds. To the contrary, equity was a flexible legal alternative that issued a variety of monetary remedies in order to address the failure of the hyper-for-malist common law courts to redress wrongs."); John H. Langbein, *What ERISA Means by "Equitable": The Supreme Court's Trail of Error in Russell, Mertens, and Great–West*, Yale Law & Economics Research Paper No. 269 (2003), available at "http://papers.ssrn.com/sol3/papers.cfm?abstract_id=371104# Paper Download" (Noting "profound flaws" in Justice Scalia's reasoning). Nevertheless, the court is obligated to try and render a decision faithful to the holding in *Great–West*.

Furthermore, although the plan in *Great–West* characterized its claim to the settlement proceeds as one for both injunction and "restitution", the Court found that the plan was not seeking relief typically available in equity. On the injunction, the Court concluded that the plan was not seeking equitable relief because it did not seek to enjoin future harm, but merely to enforce payment of sums past due. *Id.* at 210–11, 122 S.Ct. 708. Likewise, Justice Scalia noted that "for restitution to lie in equity, the action must seek not to impose personal liability on the defendant, but to *restore to the plaintiff particular funds or property in the defendant's possession.*" *Id.* at 214, 122 S.Ct. 708 (emphasis added). Applying this definition, he concluded that "equitable restitution" was not possible because the respondents did not have possession of the particular settlement funds to which the plan claimed a right. *Id.* Accordingly, the Court opined that the plan's claim was, in substance, merely a legal claim "to impose personal liability .... for a contractual obligation to pay money." *Id.* at 210, 122 S.Ct. 708. Because "[m]oney damages are, of course, the classic form of legal relief," *Id.*, the Court held that the plan's action was not authorized by ERISA § 502(a)(3).

## B. THE PENDING MOTIONS FOR DISMISSAL AND SUMMARY JUDGMENT

▮ In the present cases, Section 502(a)(3) is the very section under which the Plan proceeds. (8:02CV267, Filing No. 8 at 5; 8:02CV455, Filing No. 6 at 5). Because *Great–West* precludes the Plan from seeking "legal" relief under ERISA, the Plan has predictably pled its case as one seeking every form of equitable relief it can name, including "injunction, declaration of rights under the Plan, specific performance, mandamus, constructive trust, and equitable restitution ..." (8:02CV455, Filing No. 6 at 5). In addition, the Plan alleges that under ERISA definitions, Menking is actually a "fiduciary" of the Plan because he controls Plan assets, and further, that Menking has breached that fiduciary duty.[4] The Plan has submitted a motion for summary judgment on its claims, arguing that it properly seeks equitable relief under ERISA and is entitled to a judgment on the merits. Menking has himself submitted both a motion to dismiss under Fed.R.Civ.P. 12(b)(6) (Filing No. 13) and a motion for summary judgment (Filing No. 23). Relying on *Great–West,* Menking argues that the Plan's requests for "equitable relief" are simply artful pleading, and that the Plan is really seeking to enforce a contractual obligation to pay money which is not authorized by ERISA. Accordingly, Menking argues that the court lacks subject matter jurisdiction over the dispute.[5]

4. Actions for restitution premised on breach of fiduciary duty are apparently "appropriate equitable relief" within the meaning of § 502(a)(3). *See, e.g., Harris Trust and Sav. Bank v. Salomon Smith Barney Inc.,* 530 U.S. 238, 253, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000).

5. Menking's request for relief is perplexing. Despite arguing lack of subject-matter jurisdiction, Menking suggests the court should grant his motion for summary judgment and award him the $25,000, along with attorney's fees and costs. If the court really lacks subject-matter jurisdiction, however, the best Menking can get is a dismissal without prejudice.

In addition, Menking cites rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, which typically involve judgment on the merits. He has not cited Rule 12(b)(1), which is the usual course for challenging jurisdiction. If the attack on jurisdiction is factual, Rule 12(b)(1) requires that the plaintiff affirmatively prove jurisdiction; it does not give the plaintiff the pleading benefits of Rule 12(b)(6) or simply the burden of proving a genuine dispute of material fact under Rule 56. That said, it appears that "when an ERISA plan administrator brings a suit seeking non-equitable relief, dismissal is properly on the merits for failure to state a claim, rather than for lack of subject matter jurisdiction." *Westaff (USA) Inc. v. Arce,* 298 F.3d

## C. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Harder v. ACandS*, 179 F.3d 609, 612 (8th Cir.1999). "In making this determination, the function of the court is not to weigh evidence and make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely, to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Hedges v. Poletis*, 177 F.3d 1071, 1074 (8th Cir.1999). The court views the evidence in the light most favorable to the nonmoving party, *see Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir.1992), and gives the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *See Moore v. Webster*, 932 F.2d 1229, 1230–31 (8th Cir.1991). The court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir.1997) (*quoting Anderson*, 477 U.S. at 248, 106 S.Ct. 2505). The moving party "bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law." *Shelter Insurance Companies v. Hildreth*, 255 F.3d 921, 924 (8th Cir.2001).

■ One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses and the rule should be interpreted in a way that allows it to accomplish this purpose. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990) (*quoting Celotex*, 477 U.S at 327, 106 S.Ct. 2548).

## D. EQUITY AND THE REQUIREMENTS FOR CONSTRUCTIVE TRUST

*Great–West* clearly implies that plaintiffs might successfully seek a constructive trust or equitable lien using § 502(a)(3), but the Court noted that the plan had failed to meet the requirements of constructive trust because it had not sued someone in possession of an identified *res*. Unfortunately, it is unclear whether this was the sole hurdle to the plan's claim in *Great–West* because the Court expressly disclaimed deciding if suing the persons actually in possession of the settlement funds would have been sufficient: "[n]or do we decide whether petitioners could have obtained equitable relief against respondents' attorney and the trustee of the Special Needs Trust, since petitioners did not appeal the District Court's denial of their motion to amend their complaint to

1164, 1167 (9th Cir.2002) (*citing Cement Masons Health & Welfare Trust Fund for N. Cal. v. Stone*, 197 F.3d 1003, 1007–08 (9th Cir. 1999)) *but see, e.g., Bauhaus USA v. Copeland*, 292 F.3d 439, 445 (5th Cir.2002) (lack of subject matter jurisdiction). Whatever the standard, however, the court concludes that the Plan has affirmatively demonstrated subject matter jurisdiction, even under the strictures imposed by Rule 12(b)(1). *See* Part II,D, *infra.*

add these individuals as codefendants." *Great–West,* 534 U.S. at 220, 122 S.Ct. 708.

This ambiguity has led courts on divergent paths when deciding cases under *Great–West.* Menking relies on the Circuit that produced *Great–West,* the Ninth Circuit, which believes that *Great–West* bars relief even when the plan requests reimbursement from specific and identifiable funds held in escrow on agreement of the parties. *See Westaff (USA) Inc. v. Arce,* 298 F.3d 1164, 1166–67 (9th Cir. 2002). A number of other courts believe that *Great–West* authorizes suit when the plan deserves reimbursement (even if owed under a provision in the plan agreement) and the other requirements for constructive trust or equitable lien are met. *See Administrative Committee of Wal-Mart Stores, Inc. v. Varco,* 338 F.3d 680, 685–88 (7th Cir.2003); *see also Wellmark, Inc. v. Deguara,* 257 F.Supp.2d 1209, 1216 (S.D.Iowa 2003); *Lumenite Control Technology, Inc. v. Jarvis,* 252 F.Supp.2d 700, 703–04 (N.D.Ill.2003); *Forsling v. J.J. Keller & Assocs., Inc.,* 241 F.Supp.2d 915, 917 (E.D.Wis.2003); *IBEW–NECA Southwestern Health & Benefit Fund v. Douthitt,* 211 F.Supp.2d 812, 816 (N.D.Tex.2002); *Great–West Life & Annuity Ins. Co. v. Brown,* 192 F.Supp.2d 1376, 1381 (M.D.Ga. 2002).

The Ninth Circuit's position is perhaps plausible because the subrogation rights of plans are ultimately furnished by plan agreements, yet the forms of "equitable restitution" identified in *Great–West* are mechanisms for remedying unjust enrichment. Dobbs notes that a plaintiff requesting imposition of a constructive trust or equitable lien is not required to demonstrate legal entitlement, but rather, asserts superior equitable or moral entitlement to property because the defendant would be unjustly enriched if allowed to retain it. *See* 1 D. Dobbs, *Law of Remedies* § 4.3(2) (2d ed.1993), *see also Manker v. Manker,*

263 Neb. 944, 644 N.W.2d 522, 533 (2002) (noting "[a] constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his or her acquisition or retention of the property would constitute unjust enrichment."). Some courts have concluded that "because unjust enrichment is a quasi-contractual remedy, [t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery . . . . for events arising out of the same subject matter." *Page Mill Asset Management v. Credit Suisse First Boston Corp.,* 2000 WL 335557 at *9 (S.D.N.Y. 2000) (citations omitted); *Vescom Corp. v. American Heartland Health Administrators, Inc.* 251 F.Supp.2d 950, 971 (D.Me. 2003) ("Because an unjust enrichment claim asks the court to construct a remedy where no contract exists, it is an inapt remedy for parties who have already voluntarily entered into a written contract governing the very relationship at issue." (citations omitted)).

It is not clear, however, that this view squares cleanly with the holding in *Great–West.* If the mere involvement of a contract precludes the ability of plans to assert a constructive trust, it likely forecloses suit under ERISA § 502(a)(3) altogether (at least in federal court). Such a result exceeds the holding in *Great–West* and it is not consistent with the statutory language authorizing appropriate equitable relief to enforce "the terms of the plan." 29 U.S.C. § 1132(a)(3)(B)(ii).

Overall, given the statements made in *Great–West,* the Ninth Circuit does not provide a particularly reasoned explanation for treating a suit against identified funds held in escrow in the same manner as a suit for personal liability, and the

decision seems directly contrary to the result reached by Judge Posner in *Wal-Mart Stores, Inc. Associates' Health and Welfare Plan v. Wells*, 213 F.3d 398 (7th Cir.2000), a case *Great–West* cites with approval. In *Wells*, decided two years prior to *Great–West*, Judge Posner concluded that the plan could assert a constructive trust against a portion of the settlement funds held in the escrow account of the beneficiary's attorney. In a preview of *Great–West*, he noted that other cases "seem inclined to classify all claims of reimbursement by an ERISA plan as equitable, perhaps because of ERISA's very broad preemption clause ... which might disable a plan from enforcing its rights to reimbursement if suits to enforce them were classified as legal." *Wells*, 213 F.3d at 401. He went on to note, however, that the outer bounds of ERISA's concept of equity need not be considered, "as a suit to impose a constructive trust nestles comfortably within them under any view." *Id.* The Seventh Circuit subsequently reaffirmed this position in a decision issued last week, *see Varco*, 338 F.3d 680, 683, and this court believes it provides the preferable reading of *Great–West*.

■ According to Justice Scalia, the chancery requirements for constructive trust and equitable lien require: 1) particular money or property which is clearly traceable; 2) held by the defendant; 3) which, in good conscience, belongs to the plaintiff. *Great–West*, 534 U.S. at 213, 122 S.Ct. 708; *see also* Thomas, 36

Loy. L.A. L.Rev. at 1073 (concluding that Justice Scalia's concept of equitable restitution is "defined by 1) the request for specific relief rather than money, 2) the historical nature of the attendant cause of action as equitable, and 3) the formalistic conditions restricting the award of such relief."). After review and consideration, the court believes that the Plan's request for a constructive trust is appropriate equitable relief under the circumstances, and furthermore, the court concludes the Plan is entitled to judgment on the merits.

The Plan seeks a specific and traceable fund of $25,000 which is held by a named defendant, Mid–Century. *cf. Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir.2003) (Posner, J.) (concluding that an unendorsed check backed by funds held by the third party's insurer did not permit imposition of a constructive trust because the insurer was not named as a defendant). Mid–Century disclaims any interest in the fund, and absent enforcement of the Plan's subrogation interest, Menking will receive it. Mid-century would itself be unjustly enriched if allowed to retain the fund, and similarly, if Menking were to receive the money, he would receive what appears to be a windfall [6] in obvious derogation of the Plan's subrogation interest. In the court's view, this is the type of appropriate equitable relief contemplated by § 502(a)(3) and *Great–West*, and because there is no genuine dispute of material fact regarding the requirements for constructive trust, the

---

6. Menking's answer in 8:02CV267 asserts that Menking has incurred "in excess of $90,000 in medical expenses" and that, pursuant to the "antisubrogation rule" or "made whole" doctrine, the Plan cannot enforce its subrogation interest in the $25,000. (Filing No. 14, ¶ 5 of cross-complaint). Similarly, Menking's answer in 8:02CV455 asserts he incurred "in excess of $10,000 in medical bills that were not paid by the plan." (Filing No. 13, ¶ 7). Without passing on the availability of "made

whole" defenses, the court notes that Menking has completely failed to substantiate his allegations. On summary judgment, Menking chose to pursue only a jurisdictional argument. He did not submit evidence showing that, as an equitable matter, he should be allowed to keep the $25,000 (or a portion of it) despite the Plan's uncontested loss. In fact, he did not submit *any* evidence regarding his particular losses.

Plan is entitled to the $25,000 held by Mid–Century.

## III.  CONCLUSION

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

(1) Filing No. 9, the motion to consolidate cases 8:02CV267 and 8:02CV455 filed by the Administrative Committee of the Wal–Mart Associates Health and Welfare Plan, is granted;

(2) Filing Nos. 13 and 23, the motion to dismiss and motion for summary judgment filed by James Menking, are denied;

(3) Filing No. 19, the motion for summary judgment filed by the Administrative Committee of the Wal–Mart Associates Health and Welfare Plan, is granted; and

(4) Mid–Century Insurance Company shall deliver the $25,000 in proceeds from Underinsured Motorist Policy # 12–14339–06–51 to the Administrative Committee of the Wal–Mart Associates Health and Welfare Plan.