CEMENT MASONS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; Board of Trustees of Cement Masons Health and Welfare Trust Fund for Northern California, Plaintiffs–Appellants,

v.

Raymond STONE, Defendant–Appellee.

No. 98–16150.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 17, 1999

Filed Dec. 9, 1999

James P. Watson, Stanton, Kay & Watson, San Francisco, California, for plaintiffs-appellants Cement Masons Health & Welfare Trust Fund for Northern California, et al.

Daniel E. Wilcoxen and Steven H. Schultz, Wilcoxen, Montgomery & Harbi-

son, Sacramento, California, for defendant-appellee Raymond Stone.

Before: THOMPSON and FLETCHER, Circuit Judges, and MOLLWAY,[1] District Judge.

W. FLETCHER, Circuit Judge:

On December 19, 1995, Kimberly Stone was trying to rescue an injured dog when she was struck and severely injured by a passing car. On January 29, 1996, Ms. Stone was recovering from surgery at Chico Community Rehabilitation Hospital when a feeding tube in her abdomen was accidentally dislodged. Hospital staff allegedly reinserted the tube incorrectly, causing a massive infection that resulted in Ms. Stone's death the next day.

Appellant Cement Masons Health and Welfare Trust Fund (Cement Masons) paid $572,325.80 for Ms. Stone's medical expenses from the time of the accident until she died. On the day of her death, Raymond Stone, Ms. Stone's husband and defendant in this action, signed a reimbursement agreement with Cement Masons according to the terms of the Rules and Regulations for the Fund. The agreement required Stone to pursue diligently any claims for medical payments for his wife's injuries against a third party and to reimburse the Fund if he were to recover from such a third party.[2]

1. Honorable Susan Oki Mollway, United States District Judge for the District of Hawaii, sitting by designation.

2. The relevant language of the agreement states:

... [T]he undersigned agrees to reimburse the Fund for any payments made by the Fund on account of hospital, medical, or other expenses in connection with, or arising out of, any injury [for which a third party may be liable or legally responsible] ..., such reimbursement to be made out of any proceeds received by way of judgment, arbitration award, settlement or otherwise in connection with, or arising out of, any claim for or right to damages by the undersigned or his Dependent against such third party, his insurance carrier, guarantor, or other indemnitor, or by reason of uninsured or under-insured motorist coverage of the undersigned or his Dependent, or any other source of third party recovery.

The undersigned hereby further agrees that the undersigned and his Dependent, if any, will prosecute such claim for damages diligently; will cooperate and assist the Fund in obtaining reimbursement for such pay-

On December 18, 1996, Ms. Stone's two minor children, Matthew and Haven Stone, sued the driver of the car through their guardian ad litem, Mary Kay Carlton,[3] seeking damages for negligent infliction of emotional distress. Matthew and Haven settled the suit for $50,000, the coverage limit under the driver's insurance policy.

On January 28, 1997, Raymond Stone, and Matthew and Haven Stone (again through their guardian ad litem), sued the driver of the car; a possible owner of the car; the City of Sacramento; Chico Community Hospital; Chico Community Rehabilitation Hospital; and various hospital staff members. The suit included a wrongful death claim against the driver and possible owner of the car, but the most significant claims were based on the alleged negligence in reinserting the feeding tube. On January 21, 1998, Mr. Stone dismissed all of his claims against the defendants, leaving only Matthew and Haven as plaintiffs in that action.

When Mr. Stone failed to reimburse the Fund out of the $50,000 awarded to his children in the first suit, appellants Cement Masons and its Board of Trustees sued him for restitution under the terms of the reimbursement agreement of the plan and under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(3). Appellants argued that Mr. Stone was obligated by the Plan to give priority to claims to recover the medical expenses paid for Ms. Stone's hospitalization and surgeries. According to appellants, Mr. Stone attempted to circumvent his obligation by allowing his children to exhaust the driver's policy limits with their claims for negligent infliction of emotional distress. Appellants contended, further,

that Mr. Stone dismissed his own claims in the second lawsuit to prevent the Fund from sharing in any recovery resulting from the wrongful death claim.

Appellants sought restitution, declaratory relief, and an injunction requiring Mr. Stone (1) to acknowledge the Fund's lien against proceeds recovered from third parties; (2) to advise the Fund of the nature and status of all claims against third parties for damages in connection with Ms. Stone's injuries and death; and (3) to refrain from obstructing the Fund's right to enforce the lien against proceeds recovered by Matthew and Haven Stone.

■■■ The district court granted Mr. Stone's motion for summary judgment and dismissed for lack of subject matter jurisdiction. Interpretation of ERISA is a question of law reviewed *de novo*. See *Spink v. Lockheed Corp.*, 125 F.3d 1257, 1260 (9th Cir.1997). A decision granting summary judgment is reviewed *de novo*. See *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998). Dismissal for lack of subject matter jurisdiction is reviewed *de novo*. See *Tucson Airport Auth. v. General Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir.1998).

For the reasons that follow, we agree with the district court that appellants' complaint should be dismissed. That dismissal, however, should have been made on the merits rather than for want of subject matter jurisdiction under Fed. R.Civ.P. 12(b)(1).

1. *The Merits of Appellants' Claim*

■■■ Injunctive and "other appropriate equitable relief" is available under ERISA, 29 U.S.C. § 1132(a)(3).[4] Such relief in-

---

ments; will give priority to the reimbursement of the Fund in the allocation of the proceeds of any recovery; will execute any documents necessary to confirm or establish a lien in favor of the Fund on any such claim, action or recovery or damages or to otherwise secure such reimbursement....

**3.** The district court, relying on counsel's statements at oral argument, erroneously conclud-

ed that Mr. Stone was the guardian ad litem for the two children in the two state court actions. The complaints (provided in the record) list Mary Kay Carlton as the guardian ad litem.

**4.** "A civil action may be brought ... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any

cludes restitution, *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), but it does not include contract damages, *id.*, or reimbursement pursuant to contract, *FMC Med. Plan v. Owens*, 122 F.3d 1258 (9th Cir.1997).

■ This case is controlled by our decision in *Owens*, in which we held that reimbursement for payments appropriately made by a plan is not an available remedy under § 1132(a)(3). Applying the Supreme Court's decision in *Mertens*, we held in *Owens* that because the phrase "other appropriate equitable relief" did not encompass FMC's reimbursement claim, ERISA provided no remedy.[5] *See id.* at 1260–1262.

The facts in *Owens* are legally indistinguishable from the facts in this case. The FMC Medical Plan (FMC Plan) in that case provided that if the participant were to bring a liability claim against a third party, the participant must assert a claim for benefits payable under the Plan. *See id.* at 1259. The FMC Plan also provided that upon settlement of a third-party claim, the participant "must reimburse the FMC Plan for the benefits provided." *Id.* The FMC Plan required the participant to sign a reimbursement form in order to receive benefits on any claim with a possibility of third-party liability. *See id.* Owens signed the reimbursement form, which provided:

> I agree for myself and dependent(s), to reimburse FMC Corporation for any amounts paid by the plan and recovered from another person or company. If I bring a claim against any party, benefits

payable under this Plan must be included in the claim, and when the claim is settled I must reimburse the Plan for benefits provided.

*Id.* Owens settled his liability claim against the party responsible for the car accident that had caused the injuries for which the medical expenses were incurred, and FMC sued to enforce the terms of the FMC Plan under § 1132(a)(3). *See id.* We held that FMC's claim was for "contractual reimbursement," a remedy that was not available under § 1132(a)(3). *Id.* at 1260.

As in *Owens*, the Rules and Regulations of the Fund in this case require Mr. Stone to reimburse the Fund for medical payments arising out of claims against third parties. The Fund Rules also require Mr. Stone to give priority to reimbursement of the Fund in allocating payments and to refrain from any acts or omissions that might hinder reimbursement. We believe that the district court properly concluded under *Owens* that appellants are not entitled under § 1132(a)(3) to the remedies they seek. Indeed, appellants appeared to concede as much at oral argument before the district court and before us, where they asserted that *Owens* was wrongly decided.[6]

Appellants also make two arguments why *Mertens* and *Owens* do not control this case. Appellants first contend that they seek "restitution," which they characterize as an equitable remedy. However, restitution, as used in § 1132(a)(3), means "ill-gotten gains," *Mertens*, 508 U.S. at 260, 113 S.Ct. 2063, and we have construed ill-gotten gains to mean money obtained

---

provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan...."

**5.** Distinguishing cases involving ERISA plans that granted the insurer rights of subrogation, the court concluded that FMC's claim was for "contractual reimbursement." *Id.* Like *Owens*, this case does not involve subrogation.

**6.** See, e.g., the following colloquy in the district court:

THE COURT: ... Tell me how *FMC* [*Owens* ] doesn't apply to the facts here.

MS. OLSON: To be perfectly honest, I think *FMC* is—has misinterpreted the *Mertens v. Hewitt* and *McLeod v. Oregon Lithoprint* ....

THE COURT: The issue is what am I obliged to do, and I'm just asking you point blank: Are you asking me to ignore *FMC*?

MS. OLSON: I guess so.

through "fraud or wrongdoing," *Owens,* 122 F.3d at 1261. It is undisputed in this case that payment of Ms. Stone's medical bills by appellants was not obtained through fraud or wrongdoing. Cement Masons was required under the terms of the Plan to make those payments, and Cement Masons is not challenging their correctness. Rather, appellants contend that Mr. Stone is obliged to reimburse Cement Masons for those payments out of money obtained from third parties, and to pursue claims that might result in obtaining additional money from third parties in the future. Even if Mr. Stone has some obligation to pursue such claims and to reimburse Cement Masons (a question we do not decide), that obligation does not make money previously paid by Cement Masons "ill-gotten gains" subject to restitution within the meaning of § 1132(a)(3).

Appellants next contend that they are entitled to declaratory and injunctive relief requiring Mr. Stone (1) to acknowledge the Fund's lien against funds against third parties; (2) to refrain from obstructing Cement Masons' right to enforce the lien against proceeds recovered by defendant and his dependants from third parties; and (3) to advise Cement Masons of the nature and status of all claims against third parties for damages in connection with Ms. Stone's injuries and death. Appellants attempt to distinguish *Owens* by arguing that such injunctive and declaratory relief, unlike reimbursement, is permissible under § 1132(a)(3).

Unlike the plan in *Owens,* the Cement Masons Fund Rules and Regulations purport to establish an automatic lien on any third-party recovery for benefits paid by the Fund. We do not find that difference material. Two of the three remedies appellants seek depend on the propriety of enforcing the lien. Enforcement of a lien, however, is nothing more than a mechanism to enforce, or to obtain the equivalent of, a damage remedy. Further, on the facts of this case, the only existing fund is the $50,000 received by the two minor children, who have not been made defendants and, in any event, have no obligation whatsoever under the Plan appellants are seeking to enforce. The third remedy appellants seek is an injunction that would require Mr. Stone to keep them informed of claims against third parties. However, it is undisputed that Mr. Stone has not recovered on third-party claims and is not asserting any new third-party claims.

## 2. *Dismissal on the Merits*

█ The district court correctly applied the substantive holding in *Owens* but erred in dismissing for lack of subject matter jurisdiction. The court's error results from some confusion in our case law concerning the appropriate disposition of unsuccessful claims brought under ERISA. In *Owens,* we held that the district court lacked subject matter jurisdiction under ERISA because the Plan's claim was "not cognizable under section 1132(a)(3)." In other cases we have dismissed claims on the merits where § 1132(a)(3) provides no remedy. For example, in *McLeod v. Oregon Lithoprint Inc.,* 102 F.3d 376 (9th Cir.1996), we affirmed summary judgment on the merits for the defendant, holding that the relief plaintiff sought was not available under § 1132(a)(3). *See also Farr v. U.S. West Communications, Inc.,* 151 F.3d 908 (9th Cir.1998), amended by 179 F.3d 1252 (9th Cir.1999), *petition for cert. filed,* 68 USLW 3291 (U.S. Oct. 7, 1999) (No. 99–664) (holding that fiduciary had breached duty under ERISA but affirming summary judgment on the merits for defendant because relief was not available under § 1132(a)(3)); *Pacificare, Inc. v. Martin,* 34 F.3d 834, 835, 838 (9th Cir. 1994) (framing issue in terms of whether plaintiff could state a claim under § 1132(a)(3), not whether there was subject matter jurisdiction). At least two other circuits have concluded that the unavailability of an equitable remedy does not mean that the district court is without subject matter jurisdiction, but, rather, means that the plaintiff has failed to state

a claim upon which relief can be granted. *See Blue Cross and Blue Shield of Ala. v. Sanders,* 138 F.3d 1347, 1352–53 (11th Cir. 1998); *Health Cost Controls v. Skinner,* 44 F.3d 535, 537 (7th Cir.1995).

■ We hold that a dismissal of an ERISA claim under § 1132(a)(3) is properly a dismissal on the merits rather than a dismissal for want of subject matter jurisdiction. The failure to state a federal claim, either on the pleadings or the facts, is not the same thing as a failure to establish subject matter jurisdiction. Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if that claim is later dismissed on the merits. As the Supreme Court wrote in *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946),

> Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.... If the court ... exercise[s] its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be based on the merits, not for want of jurisdiction.

*See also Wheeldin v. Wheeler,* 373 U.S. 647, 649, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) ("We agree ... that on the face of the complaint the federal court had jurisdiction.... But on the undisputed facts, ... no federal cause of action can be made out.").

■ In this case, the district court granted summary judgment against Cement Masons. Such a disposition was arguably appropriate, given that defendant had moved for summary judgment rather than for a dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. We note, however, that defendant more properly should have moved for a dismissal under Rule 12(b)(6), given that he chose to accept as true all of plaintiffs' allegations in the complaint. In either event-whether the dismissal resulted from a summary judg-

ment, or from the granting of a motion under Rule 12(b)(6)-the district court should have dismissed on the merits. Plaintiffs' claim, while unsuccessful and possibly verging on foolhardy given our earlier decision in *Owens,* was not frivolous. A federal court has subject matter to decide a non-frivolous federal claim against a plaintiff, and a decision dismissing the claim is a decision on the merits of that claim.

We therefore AFFIRM the district court's decision dismissing appellants' claim and REMAND for entry of judgment on the merits.