# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01378-SCT

*DELLA F. YERBY*

*v.*

*UNITED HEALTHCARE INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/9/2000 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | T. JACKSON LYONS |
| ATTORNEYS FOR APPELLEE: | EDWARD ARTHUR SCALLET |
| | WILLIAM FRANCIS HANRAHAN |
| | JENNIFER E. ELLER |
| | MICHAEL D. TAPSCOTT |
| NATURE OF THE CASE: | CIVIL -INSURANCE |
| DISPOSITION: | AFFIRMED -04/18/2002 |
| MOTION FOR REHEARING FILED: | 5/17/2002; DENIED AND OPINION MODIFIED AT ¶ 29 AND FOOTNOTE 1 5/29/2003. |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Della F. Yerby and James D. Yerby filed suit on April 22, 1998, against George Langham ("Langham") and John E. Smith & Company, Inc. ("Smith") for personal injuries suffered by Della in a motor vehicle accident which occurred when a vehicle driven by Langham struck the Yerbys' vehicle from behind. On April 29, 1998, the Yerbys filed an amended complaint adding Healthcare Recoveries, Inc. ("HR, Inc.") of Louisville, Kentucky, as a plaintiff under Rule 17(b) of the Mississippi Rules of Civil Procedure stating

that HR, Inc. was the real party in interest due to an unsatisfied medical healthcare subrogation lien.

¶2.    United Healthcare Insurance Company (United) intervened pursuant to Rule 24 of the Mississippi Rules of Civil Procedure.  United claimed as its basis to intervene that under the terms of Della's insurance plan, it was contractually entitled to recover any benefits paid or payable for medical treatment of Della as a result of any recovery from another source. HR, Inc. had contracted with United to pursue subrogation claims on United's behalf.

¶3.    The Yerbys settled their suit against Langham and Smith for $738,000.00.  United moved to recover the amount it paid to Mrs. Yerby for her injuries.  Yerby filed a motion to deny United's claimed lien.  After a hearing, the circuit court held that United was entitled to reimbursement for all medical benefits it had paid on Yerby's behalf. Aggrieved by the trial court's ruling, Yerby appeals to this Court.

¶4.    We hold that the trial court and this Court have subject matter jurisdiction over this case pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1132(a)(1)(B) .  We also affirm the lower court's holding that the Wackenhut "Plan" is entitled to reimbursement from Yerby's settlement with George Langham and John E. Smith & Company, Inc.  We further hold that the made-whole rule as announced by this Court in *Hare v. State*, 733 So. 2d 277 (Miss. 1999), and the common-fund doctrine do not apply in this case.  Accordingly, we affirm the trial court.

## FACTS

¶5.    Della Yerby suffered severe back injuries as a result of a car accident on May 1, 1995. At the time of the accident, she was an employee of Wackenhut Corporation ("Wackenhut") and was covered under an employee welfare benefit plan sponsored by Wackenhut (the "Plan"). The Plan paid $53, 417.46 to cover medical expenses Yerby incurred as a result of the accident.

¶6.    The Plan is a self-funded health plan governed by ERISA, 29 U.S.C. §§ 1001 *et seq.* This means that the benefits paid out under the Plan are funded through employer and employee contributions rather than through an insurance policy. United Healthcare Insurance Company ("United") provides administrative services to the Plan.

¶7.    The reimbursement and subrogation provision of the Plan is described in the combined Plan document/summary plan description in effect at the time of the accident. It states:

> If the Plan pays more Medical Care Benefits to you than you should have been paid because expenses were not paid by you or expenses were repaid to you from sources other than an individual policy, the Plan will have the right to a refund from you. The amount of the refund is the difference between what was paid for those expenses and what should have been paid.

¶8.    Yerby filed suit against the driver and his employer. United filed a formal motion to clarify its role in the litigation as the administrator of the Plan, which was granted. Yerby later settled her case against the defendants for $738,000.00. Following this, Yerby filed a motion to deny the Plan's claimed lien. After a hearing, the circuit court held that the Plan was entitled to reimbursement for all medical benefits it had paid on Yerby's behalf. Further, the court found that because the Plan does not allow for the deduction of attorney fees from the reimbursement, Yerby was not entitled to such a deduction.

## STANDARD OF REVIEW

¶9. "In *Firestone Tire and Rubber Co. v. Bruch*, the United States Supreme Court established the rule that courts must apply a *de novo* standard of review in actions brought by ERISA plan participants to challenge the denial of benefits unless the plan vests the plan administrator with discretionary authority to make eligibility determinations or construe the plan's terms." *Sunbeam-Oster Co. Group Benefits Plan v. Whitehurst*, 102 F.3d 1368, 1373 (5th Cir. 1996) (citing *Firestone*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989)). "It is only in those cases involving plans that have not vested their administrators with such authority that the court must follow traditional principles of trust law and construe a participant's claim 'as it would have any other contract claim–by looking to the terms of the plan and other manifestations of the parties' intent." *Id*. "If the plan vests the plan administrator with discretionary authority to make eligibility determinations or construe the plan's terms, the appropriate standard of review is for abuse of discretion." *Walker v. Wal-Mart Stores, Inc.*, 159 F.3d 938, 939 (5th Cir. 1998) (citing *Firestone*, 489 U.S. at 115)).

¶10.    The Summary Plan Description at issue expressly provides that Plan fiduciaries:

> shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

It clearly invests discretion in the Plan administrators, and therefore, the Plan's interpretation should be reviewed by this Court under the deferential abuse of discretion standard. Under this standard "[courts] pull back and defer broadly although not totally to the administration's determination, upending it only if persuaded that the administrator acted unreasonably."

4

*Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1296 (7th Cir. 1993) (citing *Firestone*, 489 U.S. at 115)). As a general rule, this Court applies a de novo standard when reviewing a trial court's ruling on a question of law, which is presented in the trial court's ruling regarding interpretation of the ERISA plan. See *Zeman v. Stanford*, 789 So.2d 798, 802 (Miss. 2001).

## ANALYSIS

¶11. There are three issues in this case. First, there is a jurisdictional issue. Second, Yerby asserts that the court below was incorrect in holding that her benefits under the Plan must be reduced by the amount she recovered from the third party defendants. Third, Yerby contends that the made whole rule or common fund doctrine should apply under employee benefit plans subject to ERISA.

### (1) WHETHER THE CIRCUIT COURT AND THIS COURT HAVE SUBJECT MATTER JURISDICTION UNDER § 1132(a)(1)(B) OF ERISA?

¶12. ERISA is codified at 29 U.S.C. §§ 1001 *et seq.* Section 1132(a)(1)(B) provides that "A civil action may be brought by a participant or beneficiary...to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Yerby and United both agree that this describes the situation sub judice. Further, § 1132(e)(1) states that:

> Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraph (1)(B) and (7) of subsection (a) of this section.

5

Thus, since both sides concede that Yerby's claim falls under § 1132(a)(1)(B), state courts have jurisdiction to hear the claim. Further, neither party contested jurisdiction below.

¶13. This would appear to close the door on the jurisdictional issue. However, United contends that Yerby's argument regarding the reimbursement issue raises the question of jurisdiction. United protests that Yerby's argument is essentially that if this Court finds in her favor that this Court has jurisdiction; however, if this Court finds in favor of United then it should not have jurisdiction. Yerby claims that this is a mischaracterization of her argument. Her argument is that United is not entitled to the relief it is seeking because 29 U.S.C. § 1132(a)(3) only authorizes ERISA fiduciaries to receive equitable relief. Section 1132(a)(3) states:

> A civil action may be brought by a participant, beneficiary, or *fiduciary* (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) *to obtain other appropriate equitable relief* (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (emphasis added).

¶14. The Ninth Circuit held in *FMC Med. Plan v. Owens,* 122 F.3d 1258 (9th Cir. 1997), that federal courts did not have subject matter jurisdiction over a case where a plaintiff plan was seeking non-equitable relief under the ERISA statute; however, it altered this viewpoint in *Cement Masons Health & Welfare Trust Fund v. Stone*, 197 F.3d 1003, 1007 (9th Cir. 1999). In *Cement Masons*, the court found that any non-frivolous assertion of a federal claim suffices to establish subject matter jurisdiction, and thus "the unavailability of an equitable remedy does not mean that the district court is without subject matter jurisdiction, but, rather, means that the plaintiff has failed to state a claim upon which relief can be

6

granted." *Id*. In holding this, the Ninth Circuit stated that it was aligning itself with the Seventh and Eleventh circuits that had found that this issue was a question of whether a proper claim had been stated, although these two circuits have come to different conclusions to that question. See *Blue Cross & Blue Shield v. Sanders*, 138 F.3d 1347, 1352-53 (11th Cir. 1998); *Health Cost Controls v. Skinner*, 44 F.3d 535, 537 (7th Cir. 1995).

¶15. We find that Yerby's argument is not contesting jurisdiction, as her argument is not that this Court cannot afford United the relief it seeks, but rather, that United cannot obtain the relief it seeks in any court. Thus, this issue is more thoroughly discussed within the reimbursement analysis. Beyond that, neither party seriously contests jurisdiction, and it is clear from the statute that this Court has jurisdiction.

> **(2) WHETHER THE COURT BELOW WAS CORRECT IN HOLDING THAT YERBY'S BENEFITS UNDER THE PLAN MUST BE REDUCED BY THE AMOUNT SHE RECOVERED FROM THE THIRD PARTY DEFENDANTS?**

¶16. As stated above, Yerby contends that the trial court erred because United has no cognizable interest in the settlement proceeds since ERISA only allows plan fiduciaries traditional equitable relief, not contract damages. Yerby cites case law from the United States Supreme Court and the Ninth Circuit in support of this proposition. See generally *Great-West Life & Ann. Ins. Co. v. Knudson,* 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed.2d 635 (2002); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S. Ct. 2063, 124 L. Ed.2d 161 (1993); *Cement Masons Health & Welfare Trust Fund v. Stone*, 197 F.3d 1003 (9th Cir. 1999); *FMC Med. Plan v. Owens*, 122 F.3d 1258 (9th Cir. 1997).

7

¶17. Yerby uses these holdings and further argues that § 1132 does not authorize a fiduciary to make a claim for reimbursement *that is not equitable* in nature. She also contends that Congress appears to have deprived any relevant person, *save participants and beneficiaries*, from making any claim under a plan that is not equitable in nature. It appears that Yerby's argument is essentially that United could not have pursued this relief if they had brought the suit, and thus they should not be able to do so when Yerby brings the suit.

¶18. United first argues that Yerby's argument on this point is essentially a claim that this Court does not have subject matter jurisdiction over this action, however, as discussed above we find this to be a mischaracterization of Yerby's contentions. United further argues that under the abuse of discretion standard of review their interpretation of the plan is not unreasonable.

¶19. In *Mertens*, the Supreme Court dealt with a class of former employees who participated in a retirement plan with Kaiser Steel, and then brought suit against the plan's actuary alleging that the actuary caused losses to the plan resulting in a short fall. 508 U.S. at 250. The Court looked closely at the language of 29 U.S.C. § 1132(a)(3), and surmised that it only provided for equitable relief, not merely relief available in courts of equity. 508 U.S. at 257-58. The Court noted its "unwillingness to infer causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Id*. at 254 (emphasis in original) (quoting *Mass. Mut. Life. Ins. Co. v. Russell*, 473 U.S. 134, 146-47, 105 S. Ct. 3085, 87 L. Ed.2d 96 (1985)). The Court ultimately concluded that the relief being sought by the former employees was money

8

damages, which it noted is the "classic form of *legal* relief." *Id.* at 255 (emphasis in original) (citations omitted). ("Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages*–monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties."). From *Mertens*, it is clear that equitable relief is the only appropriate relief that may be sought under § 1132(a)(3).

¶20.    The Ninth Circuit construed the holding in *Mertens* in *FMC Med. Plan v. Owens*, 122 F.3d 1258 (9th Cir. 1997). In *Owens*, Jeffrey Owens was in an automobile accident. As a result of the accident, he incurred medical bills and was absent from work. *Id*. at 1259. The FMC plan paid his medical bills totaling $50,066.76. *Id*. The plan contained a reimbursement statement, and further required plan participants to sign an agreement to reimburse the plan in order to receive benefits. *Id*. Owens settled his suit against the driver of the other automobile for $100,000.00. *Id*. The plan initiated a suit against Owens to force him to follow the terms of the plan and reimburse the money the plan had paid on his behalf. The Ninth Circuit stated that "[e]ssentially, FMC seeks a breach of contract claim for monetary relief, albeit under its classification of 'equitable reimbursement.'" *Id.* at 1261. Thus, the Court found that the district court did not have subject matter jurisdiction to hear the matter, as the Plan was seeking relief to which it had no right. *Id*. at 1262.

¶21.    The Ninth Circuit later modified its holding in *Owens*. See *Cement Masons Health & Welfare Trust Fund v. Stone*, 197 F.3d 1003 (9th Cir. 1999). In *Stone*, the Court still found that the reimbursement the plan was seeking was not available to it, however, the Court found that this did not deprive them of jurisdiction, but rather, that the plan had failed to state a claim upon which relief could be granted. *Id*. at 1008.

9

¶22.   ***Great-West Life & Ann. Ins. Co. v. Knudson****,* 534 U.S. 204, 122 S. Ct. 708, 151

L.Ed. 2d 635 (2002) was decided by the United States Supreme Court on January 8, 2002.

Yerby argues that ***Knudson*** dictates a finding in her favor.  ***Knudson*** deals with an ERISA

plan participant (Janette) who was rendered quadriplegic by a car accident.  The Plan

covered $411,157.11 of her medical expenses, of which all except $75,000 was paid by

Great-West Life & Annuity Insurance Co, pursuant to a "stop-loss" insurance agreement with

the Plan.  The Plan included a reimbursement provision, which provided

> that the Plan shall have 'the right to recover from the [beneficiary] any
> payment for benefits' paid by the Plan that the beneficiary is entitled to recover
> from a third party.  Specifically, the Plan has 'a first lien upon any recovery,
> whether by settlement, judgment or otherwise,' that the beneficiary receives
> from the third party, not to exceed 'the amount of benefits paid [by the
> Plan]...[or] the amount received by the [beneficiary] for such medical
> treatment...'  If the beneficiary recovers from a third party and fails to
> reimburse the Plan, 'then he will be personally liable to [the Plan]...up to the
> amount of the first lien.'  Pursuant to an agreement between the Plan and
> Great-West, the Plan 'assign[ed] to Great-West all of its rights to make,
> litigate, negotiate, settle, compromise, release or waive' any claim under the
> reimbursement provision.

122 S. Ct. at 711 (citations to Plan omitted).

¶23.   The Knudsons filed a tort action in California state court seeking to recover from

Hyundai (the manufacturer of the car they were riding in at the time of the accident) and

other alleged tortfeasors.

> The parties negotiated a settlement of $650,000.  This allocated $256,745.30
> to a Special Needs Trust required under state law to provide for Janette's
> medical care; $373,426.00 to attorney's fees; $5,000.00 to reimburse the
> California Medicaid program; and $13,828.70 (the portion of the settlement
> attributable to past medical expenses) to satisfy Great-West's claim under the
> reimbursement provision of the Plan.

***Id****.*

¶24.    Prior to the hearing scheduled to approve the settlement, Great-West attempted to label itself as a defendant in the action, and have it removed to federal court. *Id.*   It was remanded back to state court after the federal court determined that Great-West was not a defendant. *Id.*   The settlement was paid out as described above, although Great-West never cashed its check. *Id.* at 711-12.

¶25.    At the same time Great-West attempted to remove the state case, it also filed a separate action in the same federal court "seeking injunctive and declaratory relief under § 502(a)(3) to enforce the reimbursement provision of the Plan by requiring the Knudsons to pay the Plan $411,157.11 of any proceeds recovered from third parties." *Knudson*, 122 S. Ct. at 712.  The district court granted summary judgment to the Knudsons, and the Ninth Circuit affirmed on different grounds finding that Great-West was only entitled under ERISA to equitable relief and the relief it was seeking was not equitable. *Id.*   Great-West appealed to the United States Supreme Court, which affirmed the Ninth Circuit's ruling.

¶26.    The Supreme Court looked at the arguments attempting to construe Great-West's claim as equitable, and rejected them all as being essentially a claim for legal relief.  The Court observed first that "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." *Id.* at 713 (citations omitted).  The Court also rejected Great-West's claim that they were seeking equitable restitution.  While the Court acknowledged that restitution had been available in cases in law and in equity, it noted that for it to be equitable that the plaintiff was seeking relief "in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could

11

clearly be traced to particular funds or property in the defendant's possession." *Id.* at 714. (citations omitted). The Court further declined to impose the common law of trusts on the action before them. *Id.* at 718.

¶27. Yerby contends that *Knudson*'s holding mandates finding in favor of her claim and reversing the trial court. At first blush, *Knudson* does seem to lean the law in Yerby's favor, however, a closer reading suggests just the opposite. The Court concludes the majority opinion with the following observations:

> *We express no opinion as to whether petitioners could have intervened in the state-court tort action brought by respondents* or whether a direct action by petitioners against respondents asserting state-law claims such as breach of contract would have been pre-empted by ERISA. Nor do we decide whether petitioners could have obtained equitable relief against respondents' attorney and the trustee of the Special Needs Trust, since petitioners did not appeal the District Court's denial of their motion to amend their complaint to add these individuals as codefendants.
>
> We need not decide these issues because, as we explained in Mertens, "[e]ven assuming ... that petitioners are correct about the preemption of previously available state-court actions" or the lack of other means to obtain relief, "vague notions of a statute's 'basic purpose' are nonetheless inadequate to overcome the words of its text regarding the specific issue under consideration." 508 U.S., at 261, 113 S.Ct. 2063. In the very same section of ERISA as § 502(a)(3), Congress authorized "a participant or beneficiary" to bring a civil action "to enforce his rights under the terms of the plan," without reference to whether the relief sought is legal or equitable. 29 U.S.C. § 1132(a)(1)(B) (1994 ed.). But Congress did not extend the same authorization to fiduciaries. Rather, § 502(a)(3), by its terms, only allows for equitable relief. We will not attempt to adjust the "carefully crafted and detailed enforcement scheme" embodied in the text that Congress has adopted. *Mertens, supra*, at 254, 113 S.Ct. 2063. Because petitioners are seeking legal relief--the imposition of personal liability on respondents for a contractual obligation to pay money-- § 502(a)(3) does not authorize this action. Accordingly, we affirm the judgment of the Court of Appeals.

*Knudson*, 122 S. Ct. at 718-19 (emphasis added).

¶28.    The case at hand presents the very issue that the Supreme Court refrained from deciding ("We express no opinion as to whether petitioners could have intervened in the state-court tort action brought by respondents..."). Yerby denies that United, as an intervening fiduciary, is able to seek relief on a claim that it could not have initiated itself under § 1132(a)(1)(B) (only "participant or beneficiary" may bring action).  It is true that the Seventh Circuit has stated that the test for whether one can intervene is whether or not one "would have 'a right to maintain a claim for the relief sought.' " **Keith v. Daley**, 764 F.2d 1265, 1268 (7th Cir. 1985) (citation omitted).  However, this interpretation has seldom been cited outside the Seventh Circuit, and countervailing authority suggests that it takes too narrow a view of the range of possible intervenors.  The U.S. Supreme Court has specifically held on one occasion that a party could intervene in a case filed under a statute which would not have permitted the party to initiate the suit, a holding which would not have been possible if that Court had interpreted Rule 24 in the same manner as did the Seventh Circuit in **Keith**.  **Trbovich v. United Mine Workers of Am.**, 404 U.S. 528, 531-32, 92 S. Ct. 630, 30 L. Ed. 2d 686 (1972) (exclusive power of Secretary of Labor to sue union under 29 U.S.C. § 482(b) did not bar union member from intervening); *see also* **New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.**, 732 F.2d 452, 465 n.25 & accompanying text (5th Cir. 1984) (distinguishing *interest* in suit, which is test under Rule 24(a)(2), from *capacity* to sue).  Moreover, our own case law supports differentiating intervention from original participation in a suit.  In one of our early cases interpreting the Mississippi counterpart to the federal Rule 24, we reversed the trial court's holding that, because a party could not have been sued, it could not intervene, preferring instead a broad application of the "interest"

standard. ***Guar. Nat'l Ins. Co. v. Pittman***, 501 So. 2d 377, 383-84 (Miss. 1987). We therefore hold that the inability of United to have initiated suit under § 1132(a)(1)(B) in no way barred it from intervening of right under Rule 24(a)(2).

¶29. Further, while the Supreme Court stated that cases under §1132 (a)(3) may only provide equitable relief, it specifically noted that the same requirement is not mandated in § 1132 (a)(1)(B), which both parties agree is the section at issue in this case. ***Knudson***, 122 S. Ct. at 718. ("In the very same section of ERISA as § 502(a)(3), Congress authorized 'a participant or beneficiary' to bring a civil action 'to enforce his rights under the terms of the plan,' without reference to whether the relief sought is legal or equitable."). Thus, under § 1132 (a)(1)(B), when determining what rights a Plan participant has in a recovery, any and all relief available is appropriate. Clearly, in the present case, Yerby is a Plan beneficiary and United is the Plan fiduciary. Under ERISA, § 1132(a)(3) will not allow for United to bring suit in a federal court and obtain anything other than equitable relief. The Supreme Court, however, expressly left open the question of whether a Plan fiduciary (United) may receive other forms of relief when a Plan beneficiary (Yerby) brings suit under § 1132(a)(1)(B) to enforce or clarify his or her rights under the Plan. To write in a restriction on the type of relief available under § 1132(a)(1)(B), which is exactly what would occur if this Court agreed with Yerby, would be an "attempt to adjust the 'carefully crafted and detailed enforcement scheme' embodied in the text that Congress has adopted." If the Supreme Court of the United States refuses to do this, it is not the place of this Court to do so. Thus, Yerby's argument that only equitable relief is available is unfounded.

14

¶30.   We find that United is not limited in the form of relief it may seek under § 1332 (a)(1)(B).[1]   Further, under an abuse of discretion standard, United's interpretation of the plan's reimbursement provision is not unreasonable, and we affirm the trial court's ruling in this regard.

### (3)   WHETHER THE MADE WHOLE RULE OR COMMON FUND DOCTRINE SHOULD APPLY UNDER EMPLOYEE BENEFIT PLANS SUBJECT TO ERISA?

### (A)   Made-Whole Rule

¶31.   The made-whole rule is "the general principle that an insurer is not entitled to equitable subrogation until the insured has been fully compensated." *Hare v. State*, 733 So. 2d 277, 281 (Miss. 1999).   This Court adopted this rule in *Hare*, however, that case dealt with a State-sponsored insurance plan and not one operating under the constraints of ERISA. The United States Supreme Court has held that ERISA preempts state subrogation law. *FMC Corp. v. Holliday*, 498 U.S. 52, 65, 111 S. Ct. 403, 112 L. Ed. 2d 356 (1990).   Thus, *Hare* does not operate as controlling precedent in this case.

¶32.   United raises three arguments against applying the made-whole doctrine in the context of this case or under ERISA plans in general.   First, United contends that Yerby has not put forward proof that she has not been made whole by the settlement she received from the defendants.   Yerby counters this argument stating that Yerby is permanently disabled and has total damages in the million dollar range. Further, the proposed settlement contains penciled-

---

[1]   Yerby's reliance on the divided panel's decision in *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439 (5th Cir. 2002), is misplaced because that case is distinguishable.   There the plan fiduciary filed suit in federal court, while here the fiduciary intervened in Yerby's suit.

in language stating that the Releasees (Langham and Smith) do not contend that Yerby has been made whole by virtue of the settlement and release.

¶33.    United's second assertion deals with policy considerations at issue. United argues that the United States Supreme Court has repeatedly recognized Congress' awareness that employee benefit plans are voluntary undertakings and that they will cease to exist unless employers can structure them in a manner that controls their cost. See *Varity Corp. v. Howe*, 516 U.S. 489, 497, 116 S. Ct. 1065, 134 L. Ed.2d 130 (1996); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. at 148 n.17. This argument is essentially a restatement of the standard of review at issue in ERISA cases.

¶34.    Finally, United contends that it would frustrate a primary purpose behind ERISA–that purpose being the concentration on making ERISA plans understandable to the general public. United cites to the language from *Sunbeam-Oster*, where the Fifth Circuit held that it would not punish an ERISA plan for not addressing "every conceivable factual variation of recovery..." 102 F.3d at 1375. The Fifth Circuit went on to say that it had "serious doubts as to whether [it] would ever approve or adopt the make-whole rule as this circuit's default rule. . . ." *Id*. at 1378.

¶35.    Other circuits have flatly stated that the made-whole rule is not applicable under ERISA. The Eighth Circuit was presented with an appellant urging the court to apply the made whole doctrine under two alternatives. *Waller v. Hormel Foods Corp.*, 120 F.3d 138 (8th Cir. 1997). First, the appellant urged the court to apply the made-whole doctrine; alternatively, it was urged that in the absence of express language claiming the plan's right to the first dollar of recovery the made-whole rule should apply. *Id*. at 139-40. As to the

appellant's first argument, the court stated that it would not treat ERISA plans as it had insurance policies. *Id*. at 140. As the Court stated,

> 'The very heart of the bargain when the insured purchases insurance is that if there is a loss he or she will be made whole. The cases that originally applied subrogation to insurance contracts...never envisioned the use of subrogation as a device to fully reimburse the insurer at the expense of leaving the insured less than fully compensated for his loss.' *Powell v. Blue Cross & Blue Shield*, 581 So. 2d 772, 777 (Ala. 1990). Employer-funded medical benefit plans should not be viewed in this fashion.

*Id*. The Eighth Circuit then cited language from the Fifth Circuit in rejecting the appellant's alternative argument, finding that under the requirement that ERISA plans be written in a comprehensive manner the language in the plan presented was "'[f]ar from the kind of silence that would be tantamount to ambiguity...[and signified] nothing more than that, regardless of the source, the rule is the same for total and partial recoveries.'" *Id*. (citing *Sunbeam-Oster*, 102 F.3d at 1376).

¶36. The First Circuit dealt with the made-whole rule in regards to ERISA in *Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274 (1st Cir. 2000). The *Harris* court declined to adopt the made-whole doctrine as federal common law for several reasons. It cited *Sunbeam-Oster*'s proposition that to adopt the made whole rule would be a disservice to the spirit behind ERISA's requirement of straightforward language. *Id*. at 280. Further, the Court stated that other ERISA objectives would be harmed if the made whole rule were adopted as a default rule. *Id*. at 280-81. First, the Court noted that "[a]lthough plan members...would benefit financially, ultimately the costs would be borne by all other plan members in the form of higher premiums for coverage." *Id*. Second, it would require cases

17

that had settled to be litigated anyway in order to determine what amount would make a plaintiff whole. *Id*.

¶37.    Two other circuits have weighed in on the side of the Fifth Circuit in unpublished opinions. *Alves v. Silverado Foods, Inc.*, 6 Fed.Appx. 694 (10th Cir. 2001); *In re Paris*, 211 F.3d 1265(4th Cir. 2000) (table) . The Seventh Circuit discussed the made-whole issue at some length before it ultimately chose not to decide by finding that it was not unreasonable for the Plan to disclaim the made-whole doctrine. *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293 (7th Cir. 1993)

¶38.    Some circuits have adopted the made-whole rule as a default rule. *See generally Copeland Oaks v. Haupt*, 209 F.3d 811 (6th Cir. 2000); *Cagle v. Bruner*, 112 F.3d 1510 (11th Cir. 1997); *Barnes v. Independent Auto. Dealers Ass'n of California Health & Welfare Benefit Plan*, 64 F.3d 1389 (9th Cir. 1994). These circuits have all generally held that in the absence of a statement to the contrary within the plan language the  made-whole doctrine should operate as the default rule. *Copeland Oaks*, 209 F.3d at 813 ("[W]e now hold that in order for plan language to conclusively disavow the default rule, it must be specific and clear in establishing *both* a priority to the funds recovered *and* a right to any full or partial recovery.  In the absence of such clear and specific language rejecting the make-whole rule–with clarity and specificity ultimately determined by the reviewing court–it is arbitrary and capricious for a plan administrator not to apply the default."); *Cagle*, 112 F.3d at 1521 ("As a default rule, the make whole doctrine applies to limit a plan's subrogation rights where an insured has not received compensation for his total loss *and* the plan does not explicitly preclude operation of the doctrine."); *Barnes*, 64 F.3d at 1395 ("We adopt as

18

federal common law this generally accepted rule that, in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation").

¶39.   We conclude that the made-whole rule should not operate as a default rule when dealing with ERISA plans.  We agree with the circuits that have held similarly that to do otherwise would be a disservice to the spirit of ERISA.  Further, as this Court has stated, we tend to give some deference to the Fifth Circuit in areas of federal interpretation.  ***Brown v. Credit Ctr., Inc.***, 444 So. 2d 358, 366 n.4 (Miss. 1983) (in construing federal law, this Court gives "great weight and deference to the interpretation of the United States Court of Appeals for the Fifth Circuit").

### (B)     Common-Fund Doctrine

¶40.   The common-fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." ***Boeing Co. v. Van Gemert***, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) (citing ***Mills v. Elec. Auto-Lite Co.***, 396 U.S. 375, 392, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970)).  Yerby contends that it would be unjust enrichment for the Plan to be reimbursed from a pot it had no part in collecting.  United cites to Fifth Circuit case law and claims that the common fund doctrine is not applicable under ERISA plans.

¶41.   The Fifth Circuit considered the issue of whether attorneys' fees should be subtracted from any recovery an ERISA plan gets in ***Walker v. Wal-Mart Stores, Inc.***.  159 F.3d 938 (5th Cir. 1998).  The court concluded that the Plan's language was unambiguous, and that it did not include a provision for attorneys' fees, thus "[i]nterpreting the provisions to provide

for attorneys' fees and expenses would have been wholly improper..." *Id*. at 940. The Third Circuit addressed the issue in ***Bollman Hat Co. v. Root***, 112 F.3d 113 (3d Cir. 1997), concluding that the plan's provision requiring reimbursement did not entitle the participant to withhold attorneys' fees and costs.

¶42.    The First Circuit also dealt with the common-fund issue in ***Harris v. Harvard Pilgrim Health Care, Inc.***,  208 F.3d 274 (1st Cir. 2000), ultimately concluding that the common-fund doctrine should not be read into ERISA plans.  The court first acknowledged district court opinions that have held that the common-fund doctrine could be read into ERISA provisions, however, it went on to state that:

> these decisions were based on the problematic premise that the common-fund doctrine would serve one of the congressional goals in enacting ERISA: "'to ensure that plan funds are administered equitably, and that no one party, not even the plan beneficiaries, should unjustly profit.'" Assuming, without deciding, that the courts may supplement ERISA by formulating federal common law "when 'necessary to effectuate the purposes of ERISA,'" in our view forefending against "unjust enrichment" is too amorphous a concept to warrant wholesale importation of the common-fund doctrine into an otherwise unambiguous ERISA plan.

*Id*. at 279 (citations omitted).  The court continued its discussion stating that:

> 'A *primary* purpose of ERISA is to ensure the integrity and primacy of the written plans...[so that] the plain language of an ERISA plan should be given its literal and natural meaning.'  Against this plain legislative purpose, if the ERISA plan expressly provides that its members are obligated to reimburse the plan for 'the value of services provided, arranged, or paid for,' we do not think it can be considered "unfair" to require plan members to abide by the agreement.

*Id*. (citations omitted).

¶43.    The Seventh Circuit has held that the common-fund doctrine would apply at least where the plan is silent on the issue.  ***Wal-Mart Stores, Inc. Associates' Health & Welfare***

20

*Plan v. Wells*, 213 F.3d 398 (7th Cir. 2000); *Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir. 1997). The court first dispatched with the argument that ERISA preempts the common-fund doctrine. It noted that while "[s]ection 514(a) [of ERISA] preempts state laws 'insofar as they...relate to any employee benefit plan", the common-fund doctrine is not about employee benefit plans. *Blackburn*, 115 F.3d at 495. It explained that "[t]he doctrine could be thought "related" to an "employee benefit plan" only in the trivial sense that, 'as many a curbstone philosopher has observed, everything is related to everything else." *Id*. (citations omitted). The court went on to state that:

> Presumably [the Plan] would not argue that ERISA preempts the state law of contracts, which requires it to pay its lawyers. The common-fund rule amounts to the same thing, requiring a party that constructively hires a lawyer to pay for successful work. [The Plan] alternatively could have used its in-house counsel to pursue the driver, but diversion of these lawyers' time from other tasks has an opportunity cost that could be substantial. But if preemption of the common-fund doctrine meant that injured persons could not charge legal costs against recoveries, people like the Blackburns would in the future have every reason to disclaim any demand for medical expenses in tort suits, throwing on plans the burden and expense of collection.

*Id*. at 496.

¶44.    The Seventh Circuit detailed in *Wells* the possibility that an injured ERISA plan participant could be worse off by virtue of having exercised his or her right to bring a law suit against a third party. 213 F.3d at 402. It also noted that "[t]he plan itself might well be worse off in the long run, as it would have to incur attorneys' fees in order to enforce its right of subrogation." *Id*. at 402. The Eighth Circuit has also held that it would apply the common-fund doctrine where the plan is silent on the issue of litigation expenses, *McIntosh v. Pacific Holding Co.*, 120 F.3d 911, 912 (8th Cir. 1997), however, it noted that "this would

21

be appropriate only if the plaintiffs can show that the Plan would have made the same arrangement that [the participant] did if it had itself engaged a lawyer to pursue a case against the tortfeasor. In the absence of such a showing, the award should be 'based on counsel's actual time devoted to the matter.' Of course, time devoted to [the participant's] efforts to defeat the Plan's subrogation rights is not compensable." *Id*. at 912.

¶45.   We find that the common-fund doctrine should not be applied under ERISA.  First, as stated previously, this Court gives deference to the Fifth Circuit's interpretation of federal law.  *Brown*, 444 So. 2d at 366 n.4.  Second, we believe it would be a disservice to Congress' dictate that ERISA plans utilize plain-speaking documents.

**CONCLUSION**

¶46.   We find no error in the trial court's decision.  First, the trial court, and this Court, have subject matter jurisdiction over this case pursuant to § 1132 (a)(1)(B) of ERISA.  Second, the court below was correct in holding that the Plan is entitled to reimbursement from Yerby's settlement with Smith and Langham.  Third, the made whole rule and the common-fund doctrine do not apply in the present case.  For the foregoing reasons, we affirm the trial court's judgment.

¶47.   **AFFIRMED.**

   **PITTMAN, C.J., WALLER, COBB AND CARLSON, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., EASLEY AND GRAVES, JJ.**

   **DIAZ, JUSTICE, DISSENTING:**

¶48.   The majority finds that United is not limited in the form of relief it may seek under 29 U.S.C. § 1332(a)(1)(B).  Because I disagree with that holding, I respectfully dissent.

¶49.    In *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L. 2d 635 (2002), the Plan brought suit against a plan participant under the subrogation clause of the plan. In support of its position, the Plan argued that it would be left with no remedy if the Court interpreted § 1132 (a)(1)(B) strictly, thus affirming the Ninth Circuit. In its opinion, the Supreme Court responded to that argument by stating that there may have been other options the fiduciaries could have taken advantage of, such as intervening in the state court action. *Knudson*, 122 S.Ct. at 718. But the Court went on to "express no opinion" as to whether such an action would be allowed under the statute because that is not the action the fiduciaries chose to pursue. The Court found that the Plan's arguments of unfairness did not overcome the words of the texts of the statute. *Id*. The Court then reiterated what the statute clearly states, that a participant or beneficiary is authorized to bring a civil action "to enforce his rights under the terms of the plan" whether the relief sought is of a legal or equitable nature. *Knudson* then states "[b]ut Congress did not extend the same authorization to fiduciaries." *Id*. In sum, *Knudson* holds that the fiduciary was seeking legal relief, or "the imposition of personal liability on respondents for a contractual obligation to pay money" and that is not allowed under the statute.

¶50.    In the case at bar, the majority seems confused as to the difference between a Plan participant or beneficiary and a Plan fiduciary,

> Thus, under § 1132(a)(1)(B), when determining what rights a Plan participant has in a recovery, any and all relief available is appropriate. Yerby's argument that only equitable relief is available [for United] is unfounded. We find that United is not limited in the form of relief it may seek under § 1132(a)(1)(B).

23

Clearly, under ***Knudson's*** strict interpretation of the statute, United (the fiduciary and administrator of the Plan) is limited to equitable relief. Therefore, the actual question this Court is left to answer is whether intervention in the state court action is to be defined as legal or equitable relief.

¶51.    A party seeking enforcement of a lien is actually seeking enforcement of contractual provision. As previously stated, enforcement of contractual provisions is not considered "equitable relief." Therefore, I would find that United is barred from seeking enforcement of its subrogation lien and reverse and render the judgment of the circuit court.

**McRAE, P.J., EASLEY AND GRAVES, JJ., JOIN THIS OPINION.**